1   DAVID H. KRAMER, State Bar No. 168452
    Email:  dkramer@wsgr.com
2   KELLY M. KNOLL, State Bar No. 305579
    Email:  kknoll@wsgr.com
3   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
4   650 Page Mill Road
    Palo Alto, CA 94304-1050
5   Telephone:  (650) 493-9300

6   *Counsel for Defendant*
    YOUTUBE, LLC

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  DASHAY HALL SR.,                    )  CASE NO.:  3:24-cv-04071-WHO
                                        )
13              Plaintiff,              )  **DEFENDANT'S NOTICE OF**
                                        )  **MOTION AND MOTION TO**
14         v.                           )  **DISMISS PLAINTIFF'S**
                                        )  **COMPLAINT**
15  YOUTUBE, LLC,                       )
                                        )  Before: Hon. William H. Orrick
16              Defendant.              )  Courtroom: 2
                                        )  Hearing Date: December 11, 2024
17                                      )  Time: 2:00 p.m.
                                        )
18  _____   )

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2
**Page**

3 NOTICE OF MOTION AND MOTION ........................................................................................ 1

4 STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ........................... 1

5 MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

6 I.     FACTUAL BACKGROUND ........................................................................................... 2

7        A.     The YouTube Service And Terms Of Use ........................................................... 2

8        B.     Plaintiff Hall And His Claims Against YouTube ................................................. 3

9 ARGUMENT ................................................................................................................................ 5

10 I.     PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION ............................... 5

11       A.     Plaintiff Fails To State A Claim For Copyright Infringement (Count VI) ............. 5

12       B.     Plaintiff Fails To State A Valid Breach Of Contract Claim (Counts I, III) .......... 10

13              1.     Hall Cannot State A Claim For Express Breach ...................................... 10

14              2.     Hall Fails To Allege An Implied Breach ................................................. 13

15       C.     Hall Cannot And Does Not State A Tort Claim Based On YouTube's
                Failure To Remove Or Reinstate Content (Counts II, IV, V) .............................. 14
16
                1.     47 U.S.C. § 230 Bars Hall's Claims ........................................................ 14
17
                2.     The First Amendment Bars Hall's Claims ............................................... 17
18
                3.     Hall Fails To State Negligence Or Tortious Interference Claims ............ 18
19
20 II.    HALL'S DAMAGES CLAIM IS BARRED BY THE LIMITATION OF
          LIABILITY PROVISION IN THE TERMS OF SERVICE ............................................ 22

21 CONCLUSION ........................................................................................................................... 22

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*AdTrader, Inc. v. Google LLC*,
  2018 U.S. Dist. LEXIS 118470 (N.D. Cal. July 13, 2018) ......................................... 20, 21

5

*Ambrosetti v. Ore. Cath. Press*,
  458 F. Supp. 3d 1013 (N.D. Ind. 2020) ................................................................. 6

6

7

*Ashcroft v. Iqbal*,
  556 U.S. ....................................................................................................... 5

8

9

*Assocs. & Aldrich Co. v. Times Mirror Co.*,
  440 F.2d 133 (9th Cir. 1971) ........................................................................... 17

10

*Athos Overseas Ltd. Corp. v. Youtube, Inc.*,
  2023 U.S. Dist. LEXIS 85462 (S.D. Fla. May 16, 2023) .......................................... 8, 10

11

12

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ..................................................................... 15, 16

13

14

*Beecher v. Google N. Am. Inc.*,
  2018 U.S. Dist. LEXIS 173805 (N.D. Cal. Oct. 9, 2018) ............................................ 10

15

*Brittain v. Twitter, Inc.*,
  2019 U.S. Dist. LEXIS 97132 (N.D. Cal. June 10, 2019) ........................................... 15

16

17

*Brown v. USA Taekwondo*,
  11 Cal. 5th 204 (2021) .................................................................................. 18

18

19

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ......................................................................... 14

20

*Chen v. PayPal, Inc.*,
  61 Cal. App. 5th 559 (2021) ........................................................................... 14

21

22

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ........................................................................... 13

23

24

*Daniels v. Alphabet Inc.*,
  2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) ........................................... 12

25

*Darnaa, LLC v. Google, Inc.*,
  2016 U.S. Dist. LEXIS 152126 (N.D. Cal. Nov. 2, 2016) ........................................... 16

26

27

*Darnaa, LLC v. Google, Inc.*,
  236 F. Supp. 3d 1116 (N.D. Cal. 2017) ............................................................... 15

28

*Darnaa, LLC v. Google LLC*,
   756 F. App'x 674 (9th Cir. 2018)........................................................................22

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
   518 U.S. 727 (1996) .......................................................................................17

*Doe No. 14 v. Internet Brands, Inc.*,
   2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) .............................19

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093  (9th Cir. 2019)..................................................................15, 19

*Ebeid v. Facebook, Inc.*,
   2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019) .................................14

*Epikhin v. Game Insight N. Am.*,
   145 F. Supp. 3d 896 (N.D. Cal. 2015) ...............................................................6

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008).....................................................................14, 15

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ............................................................................5

*Feldman v. Discover Bank*,
   2021 U.S. Dist. LEXIS 259900 (C.D. Cal. Dec. 22, 2021).............................20

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   586 U.S. 296 (2019) ...........................................................................................6

*Gemsa Ent., LLC v. Premium Packaging, LLC*,
   2021 U.S. Dist. LEXIS 255717 (C.D. Cal. Dec. 17, 2021).............................20

*George v. eBay, Inc.*,
   71 Cal. App. 5th 620 (Cal. Ct. App. 2021) ......................................................14

*Ginsberg v. Google Inc.*,
   586 F. Supp. 3d 998 (N.D. Cal. 2022) .............................................................19

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014).............................................................................5

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
   2011 U.S. Dist. LEXIS 131140 (N.D. Cal. Nov. 14, 2011) .............................18

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000)......................................................................................14

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985) .........................................................................................11

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) .................................................................................... 11

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ...................................................... 10

*In re Facebook, Inc. Secs. Litig.*,
    477 F. Supp. 3d 980 (N.D. Cal. 2020) ........................................................ 2

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020).............................................................................. 21

*Izmo, Inc. v. Roadster, Inc.*,
    2019 U.S. Dist. LEXIS 93568 (N.D. Cal. June 4, 2019) ............................ 7

*Jane Doe No. 1 v. Uber Techs., Inc.*,
    79 Cal.App.5th 410 (2022)........................................................................ 18

*Kifle v. YouTube LLC*,
    2021 U.S. Dist. LEXIS 74885 (N.D. Cal. Apr. 19, 2021)........................... 7

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ................................................................... 15

*King v. Facebook, Inc.*,
    2019 U.S. Dist. LEXIS 151582 (N.D. Cal. Sept. 5, 2019)......................... 15

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ................................................................ 19

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)..................................................................... 3

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998)..................................................................... 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003)............................................................................ 21

*Lamke v. Sunstate Equip. Co.*,
    387 F. Supp. 2d 1044 (N.D. Cal. 2004) .................................................... 13

*Lancaster v. Alphabet Inc.*,
    2016 U.S. Dist. LEXIS 88908 (N.D. Cal. July 8, 2016) ........................... 16

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020) ................................................ 13, 14

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015)................................................................... 22

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997).................................................................................... 18

*Logan v. Meta Platforms, Inc.*,
  636 F. Supp. 3d 1052 (N.D. Cal. 2022) .................................................................... 6

*Marcus v. ABC Signature Studios, Inc.*,
  279 F. Supp. 3d 1056 (C.D. Cal. 2017)..................................................................... 3

*Martin v. Tumblr, Inc.*,
  2017 U.S. Dist. LEXIS 236462 (S.D.N.Y. Feb. 10, 2017) ....................................... 8

*Miami Herald Publ'g Co., Div. of Knight Newspapers, Inc. v. Tornillo*,
  418 U.S. 241 (1974) ................................................................................................ 17

*Mishiyev v. Alphabet, Inc.*,
  444 F. Supp. 3d 1154 (N.D. Cal. 2020) ....................................................... 12, 13, 20

*Moody v. NetChoice, LLC*,
  144 S. Ct. 2383 (2024) ............................................................................................ 17

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021)...................................................................................... 12

*Olson v. World Fin. Grp. Ins. Agency, LLC*,
  2024 U.S. Dist. LEXIS 127978 (N.D. Cal. July 19, 2024) ...................................... 20

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990)............................................................................................ 19

*Pasadena Live v. City of Pasadena*,
  114 Cal. App. 4th 1089 (2004)................................................................................ 13

*Patel v. Citibank Corp.*,
  2019 U.S. Dist. LEXIS 227709 (C.D. Cal. Sept. 27, 2019) ..................................... 19

*Pearl v. Coinbase Glob., Inc.*,
  2024 U.S. Dist. LEXIS 124264 (N.D. Cal. July 15, 2024) ...................................... 19

*Prager Univ. v. Google LLC*,
  2018 U.S. Dist. LEXIS 51000 (N.D. Cal. Mar. 26, 2018) ......................................... 5

*Prager Univ. v. Google LLC*,
  2019 Cal. Super. LEXIS 2034 (Super. Ct. Cal. Nov. 19, 2019) .......................... 14, 16

*Prager Univ. v. Google LLC*,
  85 Cal. App. 5th 1022 (2022).......................................................................... 11, 12, 13

*Roca Labs, Inc. v. Consumer Op. Corp.*,
  140 F. Supp. 3d 1311 (M.D. Fla. 2015) ................................................................... 15

*Sara Designs, Inc. v. A Classic Time Watch Co.*,
      234 F. Supp. 3d 548 (S.D.N.Y. 2017) ........................................................................ 5

*Sepehry-Fard v. MB Fin. Servs.*,
      2014 U.S. Dist. LEXIS 71568 (N.D. Cal. May 23, 2014) ............................................ 5

*Sheen v. Wells Fargo Bank, N.A.*,
      12 Cal. 5th 905 (2022).............................................................................................. 19

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
      144 F. Supp. 3d 1088 (N.D. Cal. 2015) ............................................................... 15, 16

*Song Fi Inc., v. Google, Inc.*,
      108 F. Supp. 3d 876 (N.D. Cal. 2015) ...................................................................... 21

*Swartz v. KPMG LLP*,
      476 F.3d 756 (9th Cir. 2007) ...................................................................................... 2

*Swipe & Bite, Inc. v. Chow*,
      147 F. Supp. 3d 924 (N.D. Cal. 2015) ...................................................................... 20

*Tibrio, LLC v. Flex Mktg., LLC*,
      2024 U.S. Dist. LEXIS 54299 (S.D. Cal. March 26, 2024) ......................................... 21

*UAB "Planner 5D" v. Facebook, Inc.*,
      2019 U.S. Dist. LEXIS 203618 (N.D. Cal. Nov. 21, 2019) .......................................... 7

*UAB "Planner 5D" v. Facebook, Inc.*,
      2020 U.S. Dist. LEXIS 133542 (N.D. Cal. July 24, 2020) ........................................ 5, 6

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
      718 F.3d 1006 (9th Cir. 2013) ................................................................................... 11

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
      595 U.S. 178 (2022) ................................................................................................... 6

*Viacom Int'l, Inc. v. YouTube, Inc.*,
      940 F. Supp. 2d 110 (S.D.N.Y. 2013) .......................................................................... 8

*Ward v. Mitchell*,
      2013 U.S. Dist. LEXIS 58917 (N.D. Cal. Apr. 24, 2013)............................................. 6

*Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*,
      2019 U.S. Dist. LEXIS 231695 (C.D. Cal. Aug. 5, 2019) ............................................ 7

*Waste & Compliance Mgmt. v. Stericycle, Inc.*,
      2017 U.S. Dist. LEXIS 162889 (S.D. Cal. Oct. 2, 2017).............................................. 20

*Wozniak v. YouTube, LLC*,
      100 Cal. App. 5th 893 (2024).................................................................................... 18

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ............................................................... 10

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997)............................................................................... 15

**STATUTES**

17 U.S.C. § 411(a) ............................................................................................... 6, 7

17 U.S.C. § 412 ....................................................................................................... 8

17 U.S.C. § 501(b) ................................................................................................... 7

17 U.S.C. § 512(c) .............................................................................................. 8, 16

17 U.S.C. § 512(c)(1)(c) ......................................................................................... 8

17 U.S.C. § 512(c)(3) ............................................................................................. 8

17 U.S.C. §512(f) ........................................................................................... *passim*

47 U.S.C. § 230 ....................................................................................... 1-2, 14-16

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 5

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE

NOTICE that on December 11, 2024, at 2:00 p.m., before the Honorable William H. Orrick of

the United States District Court for the Northern District of California, Defendant YouTube,

LLC ("YouTube") shall and hereby does move for an order dismissing with prejudice all claims

advanced by Plaintiff in his Complaint (Dkt. No. 1, "Compl."). The motion is based upon this

Notice of Motion; the supporting Memorandum of Points and Authorities; the pleadings, records,

and papers on file in this action; oral argument of counsel; and any other matters properly before

the Court.

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Section 230 of the

Communications Decency Act, 47 U.S.C. § 230(c) ("Section 230"), YouTube seeks dismissal of

Plaintiff's Complaint without leave to amend.

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Pro se* Plaintiff Dashay Hall ("Plaintiff" or "Hall") has turned an online feud with another

YouTube user into a federal lawsuit, and improperly directed it at YouTube. In the main, Hall

claims that he was the target of false copyright infringement notices submitted by a YouTube

user who goes by the name "MoneyBoy Tr3y," whom he also accuses of harassing him across

various social media platforms. According to Hall, YouTube should have taken his side in this

feud, and he contrives various theories as to why YouTube should be responsible for his claimed

injuries.[1]

Plaintiff's misdirected case fails. The Complaint does not satisfy basic requirements for

the copyright claim he tries to plead and misapprehends online service providers' obligations

under the Digital Millennium Copyright Act ("DMCA"). Plaintiff's contract claims against

---

[1] In support of his claims, Hall attaches to his Complaint over a hundred pages of unorganized materials of unknown relevance—a hodgepodge of transcripts, screenshots, emails, reports to law enforcement, and YouTube pages. Because Hall's exhibits are not individually lettered or numbered, YouTube will refer to materials attached to the Complaint by their ECF page numbers ("Compl, Exs. at [ECF page number]").

YouTube are barred by the plain terms of the agreement he seeks to enforce, under which YouTube is free to display and remove content as it sees fit. And Plaintiff's remaining claims for negligence and tortious interference are barred both by the federal statutory immunity for interactive service providers found in Section 230 and by the First Amendment. The Complaint should be dismissed.

## I.      FACTUAL BACKGROUND

### A.      The YouTube Service And Terms Of Use

YouTube is a popular online service for sharing videos and related content. *E.g.*, Compl. ¶¶ 14, 17. Content creators upload videos to YouTube free of charge, enabling YouTube's billions of users to view, share, and comment on them. While YouTube welcomes creators with diverse backgrounds and perspectives, it is not a free-for-all. The use of YouTube is governed by a Terms of Service agreement ("TOS") that makes clear that certain kinds of content are not allowed, and that YouTube has discretion to remove unwelcome material from its service. *See* Declaration of Kelly M. Knoll ("Knoll Decl."), Ex. 1; Compl., Exs. at 113-115 (Community Guidelines).[2]

To create a "channel" and post videos to the service, users like Plaintiff must agree to the TOS and the incorporated Community Guidelines. Compl. ¶ 12; Compl., Exs. at 114. Users expressly acknowledge that "YouTube is under no obligation to host or serve Content." Knoll Decl., Ex. 1 at 4.[3] The TOS also expressly states: "If any of your Content (1) is in breach of this

---

[2] Hall identifies himself as a resident of the state of Oklahoma (Compl. ¶ 13) but attaches to his Complaint the TOS governing use of YouTube's service **in India** (Compl., Exs. at 97-112 (identifying service as "YouTubeIN")). Though the Indian TOS overlaps in many respects with the TOS governing users in the United States, it is the domestic version that controls here. *See* Knoll Decl. ¶¶ 2-3 & Ex. 1.

[3] On a motion to dismiss, the Court may consider materials that are judicially noticeable. *See, e.g.*, *In re Facebook, Inc. Secs. Litig.*, 477 F. Supp. 3d 980, 1008 (N.D. Cal. 2020). Separately, under the incorporation-by-reference doctrine, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The doctrine extends to situations where a plaintiff's claim "depends on the contents of a document," even when "the plaintiff does not explicitly allege the contents of that document in the

(continued...)

1   Agreement or (2) may cause harm to YouTube, our users, or third parties, we reserve the right to

2   remove or take down some or all of such Content in our discretion." Knoll Decl., Ex. 1 at 10.

3   The Community Guidelines identify various non-exhaustive categories of content that YouTube

4   prohibits, including harassment, cyberbullying, hate speech, and otherwise harmful or dangerous

5   content. Compl., Exs. at 114-115.

6          **B.      Plaintiff Hall And His Claims Against YouTube**

7          Hall operates multiple YouTube channels, under variations of the name "Late Night

8   Crew" or "LNC." *See* Compl. ¶ 17. Plaintiff alleges that, in April 2024, he became embroiled in

9   a dispute with two YouTube users—"MoneyBoy Tr3y" and Jedidiah Brown—that played out

10  "across all social media platforms." *E.g.*, Compl. ¶ 31.

11         One of Hall's chief gripes is that MoneyBoy Tr3y sent YouTube multiple, allegedly false

12  takedown notices pursuant to the DMCA, alleging that content on Hall's YouTube channels

13  infringed MoneyBoy Tr3y's copyrights. *E.g.*, Compl. ¶¶ 20-22. These allegedly false notices

14  caused the temporary suspension of Hall's channels under YouTube's copyright policies. Compl.

15  ¶¶ 21, 23, 40-41, 44. Hall also accuses MoneyBoy Tr3y and Jedidiah Brown of having made

16  threatening, defamatory, and/or "racially charged" statements directed to Plaintiff and his wife,

17  including on YouTube and Facebook. *E.g.*, Compl. ¶¶ 18, 27, 29, 31, 47.

18         For his part, Hall submitted DMCA takedown notices to YouTube alleging that

19  MoneyBoy Tr3y posted infringing content. Compl. ¶¶ 33, 37, 115-118. Hall claims to be the

20  "original content creator" of a video titled "Tyler Hero Feat. Christy." Compl. ¶ 115. According

21  to the Complaint, MoneyBoy Tr3y allegedly uploaded a video to YouTube that "cop[ied] the

22

23  complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, the Complaint alleges
    that the parties entered into a "contractual relationship through YouTube's Terms of Service"
24  (*e.g.*, Compl. ¶¶ 12, 17, 54, 71), and asserts a breach of contract and implied covenant claim
    based on those Terms of Service (Compl. ¶¶ 53-61, 70-87). The Complaint thus incorporates by
25  reference the Terms of Service for users in the United States attached to the Knoll Declaration.
    The remaining documents attached to the Knoll Declaration—an online copyright record, as well
26  as dockets and pleadings from cases before the Copyright Claims Board—are proper subjects of
    judicial notice. *See Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063 (C.D.
27  Cal. 2017) ("Courts routinely take judicial notice of documents from the Copyright Office.").

28

entire visual content" of Plaintiff's video. Compl. ¶¶ 116, 118. Hall alleges that he submitted a DMCA takedown notice to YouTube on May 8, 2024. Compl. ¶ 116. After YouTube processed Hall's takedown notice and removed the video, MoneyBoy Tr3y responded with a supposedly "false" counter notification. Compl. ¶¶ 116, 118. YouTube restored the video in response to the counter notification. Compl. ¶¶ 116-117.

According to Hall, YouTube should not have reinstated MoneyBoy Tr3y's video because Hall notified YouTube that he had sued MoneyBoy Tr3y. Compl. ¶¶ 33, 116, 118. It appears that Hall did sue MoneyBoy Tr3y in the new Copyright Claims Board ("CCB"), but at least originally, Hall's case was not for copyright infringement of the "Tyler Hero Feat. Christy" video. Rather, Hall claimed MoneyBoy Tr3y made misrepresentations in the counter notification sent to YouTube in violation of 17 U.S.C. §512(f). *See* Compl., Exs. at 72-76 (CCB claim). The CCB twice dismissed Hall's claim. *See* Knoll Decl., Ex. 2. Hall then changed tack and sued MoneyBoy Tr3y for infringement, but the CCB dismissed that too because Hall did not plead facts showing he actually owned the copyright in the video. *See* Knoll Decl., Exs. 3, 4. Hall tried yet again with another case (*see* Knoll Decl., Ex. 5), and in that case too, the CCB rebuffed him, ruling: "Copyright Office records for the application to register the copyright for the allegedly infringed YouTube video indicate that Late Night Crew LLC is the sole owner of the copyright" and so the claim "does not show that DaShay L Hall, Sr is a proper claimant with the ownership interest required to raise an infringement claim." Knoll Decl., Ex. 8.

With his claims against MoneyBoyTr3y failing, Hall chose to pursue YouTube instead. In this action, Hall contends that YouTube is liable for the copyright infringement he asserted against MoneyBoy Tr3y because YouTube should not have reinstated the allegedly infringing video. Compl. ¶¶ 115-119. Hall also claims that YouTube improperly removed (or failed to restore) Hall's own videos, for which YouTube received DMCA takedown notices. *See, e.g.*, Compl. ¶¶ 19, 21-23, 27, 40-41, 44. He takes further issue with YouTube's decisions to remove only some—but not all—of the third-party videos he found offensive and reported to YouTube, and he generally faults YouTube for not taking "immediate action" in response to his numerous

customer-service complaints. *See* Compl. ¶¶ 19, 24, 26, 56, 64, 74, 80, 110; *see also, e.g.*, Compl., Exs. at 40-49.

Based on these allegations, Hall asserts claims for copyright infringement, breach of contract, negligence, and tortious interference. He seeks $70,000 in compensatory damages, $150,000 in statutory damages, and injunctive relief.

## ARGUMENT

To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Prager Univ. v. Google LLC*, 2018 U.S. Dist. LEXIS 51000, at *9 (N.D. Cal. Mar. 26, 2018) (*"Prager I"*) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)). Nor should the Court accept allegations that contradict documents attached to the Complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "unwarranted deductions of fact[] or unreasonable inferences," *Sepehry-Fard v. MB Fin. Servs.*, 2014 U.S. Dist. LEXIS 71568, at *4 (N.D. Cal. May 23, 2014)).

## I.   PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION

### A.   Plaintiff Fails To State A Claim For Copyright Infringement (Count VI)

Plaintiff claims that YouTube is secondarily liable for MoneyBoy Tr3y's supposed infringement of the "Tyler Hero Feat. Christy" video. He makes this claim despite having failed repeatedly in his pursuit of a direct infringement claim against MoneyBoy Tr3y. The claim against YouTube is even more meritless. As a threshold matter, to state a claim for copyright infringement, a complaint must "'plausibly plead on its face' copyright registrations covering the works that the defendant allegedly infringed." *UAB "Planner 5D" v. Facebook, Inc.*, 2020 U.S. Dist. LEXIS 133542, at *6-7 (N.D. Cal. July 24, 2020) (quoting *Sara Designs, Inc. v. A Classic*

*Time Watch Co.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017)). A valid registration is a "prerequisite for bringing a 'civil action for infringement' of the copyrighted work." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022) (quoting 17 U.S.C. § 411(a)); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (same). If a work is not covered by a valid registration, an infringement action is "foreclosed." *Epikhin v. Game Insight N. Am.*, 145 F. Supp. 3d 896, 902 (N.D. Cal. 2015) (quoting *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998)). Critically, registration must pre-date the filing of any suit. *See UAB "Planner 5D,"* 2020 U.S. Dist. LEXIS 133542, at *3; *see also Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1059-60 (N.D. Cal. 2022) (dismissing claim for failure to allege "that the photos at issue are registered"); *Ambrosetti v. Ore. Cath. Press*, 458 F. Supp. 3d 1013, 1018-19 (N.D. Ind. 2020) (dismissing claim for failure to allege registration of the copyrighted work); *Ward v. Mitchell*, 2013 U.S. Dist. LEXIS 58917, at *9-11 (N.D. Cal. Apr. 24, 2013) (same).

Hall fails to allege that he obtained a copyright registration for "Tyler Hero Feat. Christy" (or any other work) before this case was filed. Indeed, the Complaint says nothing at all about the video's registration status. Further, a review of Copyright Office records indicates that Hall has not registered any copyrighted works. "Late Night Crew LLC," an LLC with which Hall appears to be associated, has registered a few motion pictures with the Copyright Office (one of which is identified as "Tyler Herro Pt. 1…"), but did so ***weeks after*** Hall filed suit against YouTube on July 5, 2024. *See* Knoll Decl., Ex. 9; *see also* Knoll Decl., Ex. 3 (Question: "Has the work [Tyler Hero Pt. 1…] been registered by the Copyright Office?" Answer: "No."); Knoll Decl., Ex. 7 (same).[4]

---

[4] The descriptions of the "Tyler" videos in the Complaint, the Copyright Office's record, and the CCB claims vary somewhat (*see* Compl. ¶ 115 ("Tyler Hero Feat. Christy" created in 2022 and published on TikTok); Knoll Decl., Ex. 9 ("Tyler Herro Pt. 1…." created in 2024 and unpublished); Knoll Decl., Ex. 3 at 3 ("YouTube video" titled "Tyler Hero Pt. 1"); Knoll Decl., Ex.7 (same), but they appear to refer to the same work. *See, e.g.*, Compl. ¶¶ 15, 18; Compl., Exs. at 72-76.

Importantly, "[a] plaintiff cannot cure [their] failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending [their] pending complaint." *UAB "Planner 5D" v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 203618, at *21 (N.D. Cal. Nov. 21, 2019). Many district courts, following the Supreme Court's decision on the importance of registration in *Fourth Estate*, have held that an amendment cannot cure the failure to register a copyright before suing. *See, e.g.*, *id.*; *Kifle v. YouTube LLC*, 2021 U.S. Dist. LEXIS 74885, at *15-16 (N.D. Cal. Apr. 19, 2021) (dismissing claim because "the plain language of § 411(a) refers to the beginning of a lawsuit, not the filing of an amended pleading"); *Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, 2019 U.S. Dist. LEXIS 231695, at *5-8 (C.D. Cal. Aug. 5, 2019) (plaintiff cannot cure "defect by amending the complaint after the Copyright Office completed registration of the copyright"); *Izmo, Inc. v. Roadster, Inc.*, 2019 U.S. Dist. LEXIS 93568, at *4-5 (N.D. Cal. June 4, 2019) (amendment could not "cure a claimant's failure to register its copyright before suing"). For that reason alone, Hall's copyright claim against YouTube cannot proceed.

Hall has another fatal problem: he lacks standing to sue for copyright infringement. Under the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Here, Hall claims to be the "creator" of the allegedly infringed content (Compl. ¶ 115) but does not plead facts sufficient to show that he is the owner of that work. As the CCB recognized in dismissing Hall's direct infringement claims against MoneyBoy Tr3y over "Tyler Herro Pt. 1…," the "Copyright Office records for the application to register the copyright for the allegedly infringed YouTube video indicate that Late Night Crew LLC is the sole owner of the copyright"—*not* Hall. Knoll Decl., Ex. 8; *see also* Knoll Decl., Ex. 4 (claim "d[id] not specify how DaShay L Hall, Sr is the legal or beneficial owner of the work").[5]

---

[5] While the entire copyright claim fails, it should be noted that Hall could never recover the statutory damages he seeks for the alleged infringement of "Tyler Hero Feat. Christy." Statutory damages are not available for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made

(continued...)

Even if Hall could surmount the lack of timely registration and standing, his copyright infringement claim is flawed beyond repair. As numerous courts have recognized, YouTube has robust DMCA procedures that shield it from liability for copyright infringement allegedly committed by its users. *See, e.g.*, *Viacom Int'l, Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110, 123 (S.D.N.Y. 2013); *Athos Overseas Ltd. Corp. v. Youtube, Inc.*, 2023 U.S. Dist. LEXIS 85462, at *11-14 (S.D. Fla. May 16, 2023).[6] Hall acknowledges that the DMCA would bar his claim but suggests that YouTube is not entitled to its protections because it supposedly failed to follow statutory procedures when it restored MoneyBoy Tr3y's video in response to his counter notification. Hall is incorrect.

Hall first claims that YouTube did not inform him about the counter notification as required by 17 U.S.C §512(g). *See* Compl. ¶ 116 (alleging "Plaintiff was not notified about the submission of the counter-notification by MONEYBOY TR3Y … and thus, no chance was provided to Plaintiff to rebut the counter-notification creating further loss and damage to

_____

within three months after the first publication of the work." 17 U.S.C. § 412. According to the Complaint, "Tyler Hero Feat. Christy" was created in February 2022 and published on TikTok, Compl. ¶ 115, then allegedly infringed in May 2024, Compl. ¶ 116. Assuming the work was registered with the Copyright Office (if at all) in August 2024, *see* Knoll Decl., Ex. 9, then statutory damages are not available to Plaintiff for the alleged infringement of this work.

[6] The DMCA "seeks to limit the liability of internet service providers ('ISPs') for copyright violations committed by their users." *Martin v. Tumblr, Inc.*, 2017 U.S. Dist. LEXIS 236462, at *9 (S.D.N.Y. Feb. 10, 2017). In the main, Section 512(c) protects service providers from liability for infringing material stored on their service by users if they implement a "notice-and-takedown" process through which copyright holders can report allegedly infringing content. Upon receipt of a valid notice of alleged infringement, a service provider must "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C); *see also id.* § 512(c)(3) (requirements for notifications). Service providers are also immune from claims that they improperly removed content in response to a DMCA takedown notice, so long as they afford users the opportunity to dispute the takedown through a counter-notification process. 17 U.S.C. § 512(g); *Martin*, 2017 U.S. Dist. LEXIS 236462, at * 11 ("[A]s long as an ISP follows the procedures outlined in § 512(g), the provider cannot be held liable for a claim brought by the user whose content was taken down, even if it ultimately turns out that the content was wrongfully removed because the content did not actually violate copyright laws."). A service provider that receives a valid counter notification must restore disputed content, unless the original complainant files a lawsuit seeking an injunction against the allegedly infringing user within a specified time period. *Id.* § 512(g)(2)(C).

Plaintiff"). But Hall's own allegations refute that charge. Per the Complaint, Hall sent YouTube a DMCA takedown notice for MoneyBoy Tr3y's video on May 8, 2024, MoneyBoy Tr3y submitted a counter notification to YouTube, and Hall wrote to YouTube complaining of the alleged falsity of the counter notification on May 11, 2024. *See* Compl. ¶¶ 116, 118 ("Plaintiff immediately re-communicated with YouTube on May 11, 2024, that the counter-notification was false").[7] In other words, Hall's complaint makes plain that he knew about the counter notification and promptly protested it. Given that, his claim not to have received the counter notification is baseless.

Hall also contends that YouTube should not have restored the allegedly infringing material because he sued MoneyBoy Tr3y in the CCB and informed YouTube that he had done so. *See, e.g.*, Compl. ¶¶ 33, 120. Under Section 512(g), in response to a counter notification, a service provider must:

> replace[] the removed material and cease[] disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, ***unless*** its designated agent first receives notice from the [original copyright claimant] that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

17 U.S.C. § 512(g)(2)(C) (emphasis added). Hall contends his lawsuit in the CCB should have prevented restoration of the material. But as noted, Hall's CCB action against MoneyBoy Tr3y was not for copyright infringement. **The only claim Hall filed against MoneyBoy Tr3y during the relevant time window was for misrepresentation under §512(f)—not for copyright infringement.** *See* Compl., Exs. at 72-76; *see also* Knoll Decl., Ex. 6. Such an action does not stay a service provider's restoration of allegedly infringing material following a counter notification. *See* 17 U.S.C. §512(g)(2)(C). Accordingly, even if there were a timely copyright registration in this case, and even if Hall had standing to sue for infringement, any claim against

---

[7] The attachments to Plaintiff's Complaint show that YouTube forwarded a counter notification on May 10, 2024. *See* Compl., Exs. at 68-69, 139-140.

YouTube would flounder in light of YouTube's DMCA protection. *See Athos Overseas Ltd. Corp.*, 2023 U.S. Dist. LEXIS 85462, at *38.

**B.      Plaintiff Fails To State A Valid Breach Of Contract Claim (Counts I, III)**

Hall also includes various claims alleging YouTube breached the TOS agreement. Compl. ¶¶ 70-87 (breach of contract); *id.* ¶¶ 53-61 (implied covenant). His alleged breaches fall into three categories:

- *First*, he alleges that YouTube failed to "investigate" or take "immediate corrective action" to restore his videos upon receipt of Plaintiff's "legal notices," including "valid counter-notifications." Compl. ¶¶ 74, 80, 83.

- *Second*, he claims that YouTube failed to conduct "a proper investigation into [MoneyBoy Tr3y's] false DMCA claims and [his own] harassment reports" before terminating Plaintiff's channels. Compl. ¶ 77, 79;[8] *see also* Compl. ¶¶ 84, 86.

- *Third*, he reprises his claim that YouTube improperly restored MoneyBoy Tr3y's video. Compl. ¶ 76.

But the length of Hall's grievance list does not help him. To state a claim for breach of contract under California law, a Plaintiff must identify not only the contract at issue but also "allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (quoting *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011)); *see also, e.g., Beecher v. Google N. Am. Inc.*, 2018 U.S. Dist. LEXIS 173805, at *5-6 (N.D. Cal. Oct. 9, 2018). Here, Hall points to no promises in the TOS that YouTube supposedly breached. Indeed, his claims are at odds with the actual terms of the TOS.

### 1.      Hall Cannot State A Claim For Express Breach

Insofar as Plaintiff's contract claims are predicated on YouTube's removal of his content, Plaintiff points to no contractual guarantee that YouTube would host his content. Nor does he identify any promise by YouTube to "initiate an immediate investigation" into allegedly false

---

[8] This claim is particularly mystifying in that Hall instructed YouTube support ***not*** to investigate allegedly false claims or to assist him further on multiple occasions. Compl., Exs. at 85 (Mr. Hall: "Close all of my cases. I'm contacting an attorney and do not consent to YouTube doing any further investigations into the false DMCA claims…. Close the cases. I do not need any further help."); *see also* Compl., Exs. at 84, 120.

1   copyright takedown notices (Compl. ¶ 80), or to take "immediate corrective action" upon receipt

2   of a counter notice (Compl. ¶¶ 56(a), 74).[9] That is because no such promise exists. Further, any

3   attempt to divine a contractual promise to protect Hall's channels from "false" takedown notices,

4   or to "immediate[ly]" reinstate content, would be at odds with the express terms of the parties'

5   agreement.[10]

6          YouTube expressly reserves the right to remove content from its platform at its

7   discretion. Knoll Decl., Ex. 1 at 10 ("we reserve the right to remove or take down some or all of

8   such Content in our discretion"). YouTube's authority to remove content is not confined to

9   material that violates YouTube's Community Guidelines or other policies, nor is it constrained

10  by a given user's opinion as to whether content violates YouTube's policies. *See Prager Univ. v.*

11  *Google LLC*, 85 Cal. App. 5th 1022, 1039 (2022) (holding that YouTube's Terms of Service,

12  Community Guidelines, and advertising agreements "give defendants 'unfettered and unilateral

13  discretion to remove, restrict, demonetize, or de-emphasize content as they see fit'"). The TOS

14  also make clear that "YouTube is under no obligation to host or serve Content." Knoll Decl., Ex.

15
16  [9] Plaintiff rattles off a litany of supposed breaches that he describes as YouTube ignoring
    customer-service requests or failing to protect his channel from copyright notices he considers
17  false. *See, e.g.*, Compl. ¶ 75 (claiming YouTube failed to "facilitate proper communication
    between parties in copyright disputes"); ¶ 81 (claiming YouTube violated a "promise that
18  content licensed from the YouTube Audio Library would not result in copyright infringement
    claims"). But all of these grievances run into the same basic problem. Plaintiff has not identified
19  the express term of the contract YouTube has allegedly violated.

20  [10] Any duty to "immediate[ly]" reinstate content, or to protect Plaintiff's channels from "false"
    takedown notices, would also be at odds with (and preempted by) the DMCA. The DMCA does
21  not contemplate "immediate" reinstatement of content upon receipt of a counter notification. *See,
    e.g.*, 17 U.S.C. § 512(g)(2)(C) (service provider will "replace[] the removed material and cease[]
22  disabling access to it ***not less than 10, nor more than 14, business days*** following receipt of the
    counter notice" (emphasis added)). More generally, the DMCA "place[s] the burden of policing
23  copyright infringement … squarely on the owners of the copyright," not on service providers
    who operate the systems where material is stored or hosted. *UMG Recordings, Inc. v. Shelter*
24  *Cap. Partners LLC*, 718 F.3d 1006, 1022 (9th Cir. 2013). Plaintiff's insistence that YouTube
    "investigate" the veracity of the copyright claims in takedown notices is incompatible with the
25  approach Congress mandated. *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707,
    713 (1985) ("Even where Congress has not completely displaced state regulation in a specific
26  area, state law is nullified to the extent that it actually conflicts with federal law," such as "when
    state law 'stands as an obstacle to the accomplishment and execution of the full purposes and
27  objectives of Congress.'") (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).
28

1 at 4. In *Prager University v. Google LLC*, the California Court of Appeal explained that a contract claim that would "constrain [Google and YouTube's] conduct as publishers" is not a claim for the "enforcement of any express promise, but for imposition of a duty that would be at odds with the express reservation of defendants' unfettered discretion in making publishing decisions." 85 Cal. App. 5th at 1037, 1039. That holding, by itself, defeats any contract claim here. *See, e.g.*, *Daniels v. Alphabet Inc.*, 2021 U.S. Dist. LEXIS 64385, at \*25 (N.D. Cal. Mar. 31, 2021) (dismissing contract claims against YouTube based on removal of content); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020), *aff'd*, 857 F. App'x 907 (9th Cir. 2021) (same).

Plaintiff nevertheless claims that YouTube breached the TOS by misapplying its policies when removing or restricting access to Plaintiff's content. *See, e.g.*, Compl. ¶¶ 51, 74, 76-77, 79-80, 83, 86 (removing Plaintiff's videos or channels by misapplying policies concerning copyright infringement). But Plaintiff's disagreement with how YouTube has enforced its policies does not amount to a breach of contract. To the contrary, "[b]ecause 'defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" *Daniels*, 2021 U.S. Dist. LEXIS 64385, at \*25; *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (contract claim based on Twitter's allegedly wrongful suspension of the plaintiff's account "necessarily fail[ed] … because Twitter's terms of service expressly state that they reserve the right to 'suspend or terminate [users'] accounts … for any or no reason' without liability").

Equally flawed is any contract claim based on YouTube's alleged failure to remove third-party content that Plaintiff finds objectionable or that, in his view, violates YouTube's Community Guidelines or other policies. *See, e.g.*, Compl. ¶¶ 76-77, 84, 86 (alleging YouTube failed to remove content in response to Plaintiff's reports, including content Plaintiff considered infringing or harassing). The Terms of Service establish YouTube's discretion to enforce its Community Guidelines—they do not impose an obligation to do so in a given case, and certainly do not give each user a contractual right to insist on the removal of content the user finds objectionable. *See* Knoll Decl., Ex. 1. As the California Court of Appeal explained in *Prager*,

1    "YouTube's Terms of Service … contain no provision purporting to constrain [YouTube's]

2    conduct as publishers." *Prager Univ.*, 85 Cal. App. 5th at 1037; *accord Cross v. Facebook, Inc.*,

3    14 Cal. App. 5th 190, 201 (2017) ("Facebook's Terms of Service 'place restrictions on users'

4    behavior,' [but] they 'do not create affirmative obligations' on Facebook."). The same is true of

5    YouTube's Community Guidelines, which "in no way purport to bind" YouTube or "limit

6    [YouTube's] express reservation of rights." *Prager Univ.*, 85 Cal. App. 5th at 1038. While

7    YouTube invites users to report objectionable content (*see* Knoll Decl., Ex. 1 at 4), YouTube

8    makes no promises that such reports will be handled in the way that the reporting users desire. In

9    fact, the TOS unequivocally ***disclaims*** any promise regarding what third-party content would be

10   on the platform: "YOUTUBE DOES NOT MAKE ANY SPECIFIC COMMITMENTS OR

11   WARRANTIES ABOUT … THE CONTENT PROVIDED THROUGH THE SERVICE." Knoll

12   Decl., Ex. 1 at 12.

13        YouTube cannot be charged with breaching non-existent provisions of the TOS, much

14   less imaginary provisions that contradict the actual terms. Accordingly, Hall has failed to state a

15   claim for breach of contract.

16                    2.    Hall Fails To Allege An Implied Breach

17        For similar reasons, Hall has no viable implied covenant claim. His allegations "'add

18   nothing to [his] claim for breach of contract.'" *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961

19   (N.D. Cal. 2020) (quoting *Lamke v. Sunstate Equip. Co.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal.

20   2004)). The implied covenant "cannot be extended to create obligations not contemplated by the

21   contract." *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004). His attempt

22   to invoke the covenant either imposes limits "beyond those to which the parties actually agreed,"

23   rendering it "invalid," or "seeks simply to invoke terms to which the parties did agree,"

24   rendering it "superfluous." *Lewis*, 461 F. Supp. 3d at 961.

25        Moreover, as explained above, the TOS expressly reserves YouTube's right to moderate

26   content as it pleases. As a matter of law, its exercise of that express contractual right cannot give

27   rise to a claim for breach of the implied covenant. *See, e.g.*, *Mishiyev*, 444 F. Supp. 3d at 1159-

28

60 (implied covenant claim failed where YouTube had the express right to remove videos); *Lewis*, 461 F. Supp. 3d at 962) (same), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Prager Univ. v. Google LLC*, 2019 Cal. Super. LEXIS 2034, at *31-32 (Super. Ct. Cal. Nov. 19, 2019) ("*Prager II*") (same); *Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876, at *21-22 (N.D. Cal. May 9, 2019) (same for Facebook); *cf. Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 571 (2021) (implied covenant claim failed where PayPal had sole discretion to hold users' funds).[11]

## C.   Hall Cannot And Does Not State A Tort Claim Based On YouTube's Failure To Remove Or Reinstate Content (Counts II, IV, V)

As an alternative means of challenging YouTube's decisions over what content to host or remove from its service, Hall asserts state tort claims for negligence (Compl. ¶¶ 62-69), and tortious interference (Compl. ¶¶ 88-113). The gist of the claims is the same: YouTube was negligent in failing to handle content the way Hall would like, and YouTube's failing interfered with some opportunity Hall claims to have had. These claims go nowhere.

### 1.   47 U.S.C. § 230 Bars Hall's Claims

Federal law, 47 U.S.C. § 230(c)(1), grants online services sweeping protections over decisions that they make to host or remove third-party content. It provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[12] The

---

[11] Plaintiff's implied covenant claim also fails because it is untethered to any contract term. An implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000); *see also George v. eBay, Inc.*, 71 Cal. App. 5th 620, 638 (Cal. Ct. App. 2021) ("[W]here there is independent consideration … the implied covenant cannot be used to vary the express terms of the contract."). The Complaint never identifies an express term that supports Plaintiff's claim. Instead, it vaguely references the Terms of Service and Community Guidelines. Compl. ¶ 54. None of those references identifies a substantive duty located in the "specific terms" of the parties' agreement.

[12] Congress enacted Section 230 "for two basic policy reasons: to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); *see also Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc) (Congress enacted Section 230 "to protect websites against the evil of liability for failure to remove offensive content.").

---

statute "shields from liability all publication decisions," such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1102, 1105 (9th Cir. 2009). Put differently, it protects "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *Roommates*, 521 F.3d at 1170-71; *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.").[13]

Courts in this District and nationwide have repeatedly applied Section 230(c)(1) to reject claims that attempt to hold online platforms liable for their decisions about how to regulate or moderate user-submitted content. *See, e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (Facebook immune for removing user's page); *King v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 151582, at *8-10 (N.D. Cal. Sept. 5, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021) (same for claims arising from Facebook "removing [plaintiff's] posts, blocking his content, or suspending his accounts"); *Brittain v. Twitter, Inc.*, 2019 U.S. Dist. LEXIS 97132, at *7-8 (N.D. Cal. June 10, 2019) (Twitter immune from claims based on "deletion of [plaintiff's] Accounts"). And they have applied the statutory immunity to bar all manner of claims. *See Barnes*, 570 F.3d at 1102-05 (negligent undertaking claim); *Roommates*, 521 F.3d at 1175 (Fair Housing Act claims); *Dyroff v. Ultimate Software Grp*., *Inc.*, 934 F.3d 1093, 1096-1100 (9th Cir. 2019) (negligence, wrongful death, premises liability, civil conspiracy, and unjust enrichment claims); *Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1268-70 (9th Cir. 2016) (RICO, unfair competition, and libel claims); *Darnaa, LLC v. Google, Inc*., 236 F. Supp. 3d 1116, 1120 (N.D. Cal. 2017), *aff'd*, 756 F. App'x 674 (9th Cir., 2018) (tortious interference claim); *Roca Labs, Inc. v. Consumer Op. Corp*., 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015) (tortious interference claim; collecting cases).

---

[13] Section 230 carves out federal intellectual property claims from its immunity. *See* 47 U.S.C. § 230(e)(2). Accordingly, it does not overlap with the DMCA's protections against copyright infringement.

1    The Ninth Circuit has established a three-part test for applying Section 230. The statute

2 "protects from liability (1) a provider or user of an interactive computer service (2) who a

3 plaintiff seeks to treat ... as a publisher or speaker (3) of information provided by another

4 information content provider." *Barnes*, 570 F.3d at 1100-01. These elements are readily apparent

5 here.

6    First, there can be no dispute that YouTube is an "interactive computer service" provider.

7 *E.g.*, *Prager II*, 2019 Cal. Super. LEXIS 2034, at *20 n.2; *Darnaa, LLC v. Google, Inc.*, 2016

8 U.S. Dist. LEXIS 152126, at *20-21 (N.D. Cal. Nov. 2, 2016); *Lancaster v. Alphabet Inc.*, 2016

9 U.S. Dist. LEXIS 88908, at *7 (N.D. Cal. July 8, 2016).

10    Second, Hall's claims are plainly based on content that he himself created and uploaded

11 to YouTube (*e.g.*, Compl. ¶ 22 (describing montage of footage used in making the videos)), or

12 that other YouTube users created and uploaded to the platform (*e.g.*, Compl. ¶¶ 26, 29, 31, 34,

13 36). There is no allegation (nor could there be) that YouTube itself created or developed the

14 content at issue. Because that content was "provided by another information content provider,"

15 the second step in the Section 230 analysis is satisfied. *See* 47 U.S.C. § 230(c)(1); *SFJ*, 144 F.

16 Supp. 3d at 1094-95.

17    Third, Hall's claims treat YouTube as a publisher by attacking YouTube's performance

18 of traditional editorial functions. While presented under various causes of action, Hall's theories

19 of liability amount to direct attacks on YouTube's decisions to publish or withdraw third-party

20 content, whether posted by Hall or others. These are classic examples of YouTube's exercise of

21 editorial judgments, which fall squarely within Section 230(c)(1)'s protections. As the court in

22 *Prager II* explained, "challenges to a service provider's editorial discretion 'treat' the provider

23 'as a publisher.'" 2019 Cal. Super. LEXIS 2034, at *26-27 (citing *SFJ*, 144 F. Supp. 2d 1088).

24    Because all three elements of the Section 230 test are easily satisfied here, the statute bars

25 Hall's tort claims.

26

27

28

1

2.   The First Amendment Bars Hall's Claims

2            Hall's negligence and tortious interference claims seek to undermine YouTube's ability

3    to determine what content will appear on its service. As a result, the claims conflict with

4    YouTube's First Amendment rights. The Supreme Court recently reaffirmed the First

5    Amendment rights of social media platforms in considering attempts by Florida and Texas to

6    restrict platforms' ability to moderate content. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383

7    (2024). As the Court explained, the content that appears and does not appear on platforms "is the

8    product of a wealth of choices about whether—and, if so, how—to convey posts having a certain

9    content or viewpoint," and "[t]hose choices rest on a set of beliefs about which messages are

10   appropriate and which are not (or which are more appropriate and which less so)." *Id.* at 2405.

11   As a result, "[w]hen the platforms use their Standards and Guidelines to decide which third-party

12   content those feeds will display, or how the display will be ordered and organized, they are

13   making expressive choices. And because that is true, they receive First Amendment protection."

14   *Id.* at 2406; *see also Miami Herald Publ'g Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418

15   U.S. 241, 258 (1974) (First Amendment protects "exercise of editorial control and judgment").

16   Just as "the courts ... should [not] dictate the contents of a newspaper," *Assocs. & Aldrich Co. v.*

17   *Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971), the First Amendment does not allow Hall

18   to use the courts to control the contents of YouTube's service. *Accord Denver Area Educ.*

19   *Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 737-38 (1996) (plurality opinion) ("[T]he

20   editorial function itself is an aspect of 'speech,' and a court's decision that a private party, say,

21   the station owner, is a 'censor,' could itself interfere with that private 'censor's' freedom to

22   speak as an editor."). Hall seems to think that YouTube should face legal liability for its editorial

23   decisions to publish and remove content on its platform. *E.g.*, Compl. ¶¶ 64, 67, 91, 98, 102. And

24   he seeks an order compelling YouTube to make editorial choices different from those it has

25   made. Compl., Prayer for Relief.[14] The First Amendment bars these claims.

26

27   [14] Hall seeks "injunctive relief requiring Defendant to reinstate Plaintiff's YouTube channels and
     to remove the infringing content from its platform," as well as "an order enjoining Defendant, its

28                                                                                         (continued...)

3.   <u>Hall Fails To State Negligence Or Tortious Interference Claims</u>

Finally, Hall has not pled facts sufficient to state viable tort claims.

***Negligence***. A negligence claim under California law can arise "only when the defendant owes the plaintiff a duty of care." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 348 (1997). And "[d]uty is not universal; not every defendant owes every plaintiff a duty of care.'" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (citation omitted). A duty must be "imposed by law," "assumed by the defendant," or "aris[e] out of a preexisting relationship." *Green Desert Oil Grp. v. BP W. Coast Prods.*, 2011 U.S. Dist. LEXIS 131140, at *16-17 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th Cir 2014).

Here, Hall alleges that YouTube owed him a duty of care "to handle DMCA claims, harassment reports, and account management responsibly and diligently." Compl. ¶ 63. And he alleges YouTube breached that duty in various ways, all of which can be boiled down to YouTube's alleged removal of (or failure to reinstate) Hall's content,[15] or YouTube's publication of (or failure to remove) others' content.[16] The Complaint, however, fails to identify the source of YouTube's supposed duty (or even what it would mean, for example, to "handle … account management" in a manner Hall perceives as "responsibl[e] and diligent[]," Compl. ¶ 63). Numerous cases have rightly held—for a variety of reasons—that internet platforms do not owe a duty of care to their users with respect to the handling of user content. *See, e.g.*, *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 909-913 (2024); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79

---

[15] *See* Compl. ¶ 64.a ("[f]ailing to verify the legitimacy of DMCA takedown notices"), *id.* ¶ 64.k ("fail[ing] to notify Plaintiff" of takedown), *id.* ¶ 64.c ("failing to address rejected counter notifications adequately"); *id.* ¶ 64.g ("[a]llowing false claims"), *id.* ¶ 64.l ("fail[ing] to initiate an immediate investigation" into false claims), *id.* ¶ 64.h ("[f]ailing to reinstate Plaintiff's channel"), *id.* ¶ 64.j ("[f]ailing to acknowledge and properly address Plaintiff's issue" through customer-support chat).

agents, attorneys, and assigns from asserting false DMCA claims against Plaintiff." Compl., Prayer for Relief.

[16] *See* Compl. ¶ 64.d ("[r]einstating content that violated its own policies"), *id.* ¶ 64.i ("[r]einstating Avington's video"), *id.* ¶ 64.b ("[i]nadequately responding to multiple reports of harassment and hate speech"), *id.* ¶ 64.e ("failing to act on police reports and evidence of harassment" by third parties), *id.* ¶ 64.f ("not taking action against Moneyboy Tr3y").

Cal.App.5th 410, 420-429 (2022); *Dyroff*, 934 F.3d at 1100-1110; *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1009 (N.D. Cal. 2022); *Doe No. 14 v. Internet Brands, Inc.*, 2016 U.S. Dist. LEXIS 192144, at *12-15 (C.D. Cal. Nov. 14, 2016); *Patel v. Citibank Corp.*, 2019 U.S. Dist. LEXIS 227709, at *12-16 (C.D. Cal. Sept. 27, 2019). The same is true here. Hall's negligence claim fails for want of the requisite duty of care.

Even if there were a duty, Hall's negligence claim is also barred by the economic loss rule. Generally speaking, "[u]nder California law, 'there is no recovery in tort for negligently inflicted purely economic loss.'" *Pearl v. Coinbase Glob., Inc.*, 2024 U.S. Dist. LEXIS 124264, *14 (N.D. Cal. July 15, 2024); *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (defining "purely economic losses" as "financial harm unaccompanied by physical or property damage"). Plaintiff vaguely alleges that YouTube caused him "significant harm," but the only actual, non-speculative, non-conclusory harm Plaintiff gestures at is the "loss of income" resulting from the temporary suspension of his channels. Compl. ¶ 68. That supposed loss is purely economic in nature, and the economic loss rule bars it.

***Tortious Interference.*** Hall claims that by removing his content in response to copyright infringement notices and by temporarily suspending his channels, YouTube "intentionally disrupted the Plaintiffs [sic] contractual relationships" and "engaged in intentional acts designed to disrupt Plaintiff's prospective economic advantage."[17] Compl. ¶¶ 91, 102.

For a tortious interference with contract claim, a plaintiff must plead "a valid contract between plaintiff and a third party," YouTube's knowledge and intent to disrupt that contract, and "actual breach or disruption of the contractual relationship." *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Hall does not adequately plead any of those

---

[17] In support of his tortious interference with prospective economic advantage claim, Hall also indicates YouTube erred by "issuing wrongful DMCA takedowns." Compl. ¶ 102; *id.* ¶ 109 ("issuance of false DMCA takedowns"). While it is unclear what Hall means by this, the Complaint alleges only that takedown notices were submitted by Hall and third parties. *See, e.g.*, Compl. ¶ 40; Compl., Exs. at 50-51, 66-67, 87-88; *see also* Compl., Exs. at 61-64, 68-69, 139-140.

elements. For the supposed contract, he vaguely alleges that YouTube interfered with "Plaintiff's contractual relationships with viewers, sponsors, and collaborators" (Compl. ¶ 98), but he fails to identify those agreements—or to even name a single third party with whom he has (or had) a contractual relationship.[18] Hall likewise fails to allege YouTube had knowledge of any specific contract, much less an intent to disrupt it. *See Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (claim requires pleading defendant's knowledge of specific contracts with "specific customers"); *Gemsa Ent., LLC v. Premium Packaging, LLC*, 2021 U.S. Dist. LEXIS 255717, at *15-16 (C.D. Cal. Dec. 17, 2021) (dismissing claim for tortious interference at pleading stage where plaintiff "did not allege any facts making it plausible that [defendant] intended to disrupt [plaintiff's] relationship with [a prospective client]"). And he does not allege how some specific contract was particularly disrupted. *See Feldman v. Discover Bank*, 2021 U.S. Dist. LEXIS 259900, at *5 (C.D. Cal. Dec. 22, 2021) (plaintiff must plead "what terms of the contract" the third parties allegedly breached); *Waste & Compliance Mgmt. v. Stericycle, Inc.*, 2017 U.S. Dist. LEXIS 162889, at *11 (S.D. Cal. Oct. 2, 2017) (plaintiff must "explain the facts underlying such breach."). Hall's vague assertion that YouTube's suspension of his YouTube channel impacted his ability to fulfill contractual obligations to advertisers and sponsors is not nearly sufficient. *See AdTrader, Inc. v. Google LLC*, 2018 U.S. Dist. LEXIS 118470, at *16 (N.D. Cal. July 13, 2018) (dismissing claim where plaintiff alleged it "had contractual relationships with over two hundred web publishers," but did not plead "factual allegations that show that Google purportedly interfered with a specific contract for each web publisher"); *Mishiyev*, 444 F. Supp. 3d at 1161 (similar).

Hall fares no better with a claim for tortious interference with economic advantage. Here, he fails to adequately plead "the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff." *Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 U.S. Dist. LEXIS 127978, *9 (N.D. Cal. July

---

[18] At most, Hall points to his agreement **with YouTube**. Compl. ¶ 98 ("Although YouTube's platform usage is an at-will agreement … interference with an at-will contract is actionable.").

19, 2024). Instead, he offers only that he "had a valid and reasonable expectation of future economic benefits from his YouTube channel, including revenue from ads, sponsorships, and donations." Compl. ¶ 100. That conclusory assertion is properly disregarded. Hall must plead the specific relationship he had from which he stood to gain an economic advantage. *See Tibrio, LLC v. Flex Mktg., LLC*, 2024 U.S. Dist. LEXIS 54299, *11-12 (S.D. Cal. March 26, 2024) (dismissing claim for negligent interference with prospective economic advantage where the plaintiff made broad claims that it had "an economic relationship" with "different advertisers and publishers" that would have resulted in economic benefit).[19]

Hall's economic advantage claim fails too because he has not plausibly alleged YouTube committed any wrongful acts designed to disrupt some specified economic relationship. The law requires Hall to plead conduct that was independently wrongful "beyond the fact of the interference itself." *See AdTrader, Inc.*, 2018 U.S. Dist. LEXIS 118470, at *18. Conduct is "independently wrongful if it is unlawful, that is, proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003)). Hall does not, and cannot, allege that YouTube's temporary suspension of Plaintiff's channels, in response to copyright infringement notices and consistent with YouTube's policies, was a wrongful act, let alone an illegal one. *See e.g.*, *Song Fi Inc., v. Google, Inc.*, 108 F. Supp. 3d 876, 887-88 (N.D. Cal. 2015) (dismissing a claim for tortious interference and finding that removing a video from YouTube did not qualify as an act that "was 'wrongful' apart from the tortious interference itself").

---

[19] To the extent that Hall is here referencing economic benefit that could accrue to him as a result of payments from YouTube via YouTube's Partner Program, which allows creators to monetize their content on YouTube, these benefits would arise from his relationship with YouTube, not with any third party, and are therefore not relevant for a claim of intentional interference.

**II.    HALL'S DAMAGES CLAIM IS BARRED BY THE LIMITATION OF LIABILITY PROVISION IN THE TERMS OF SERVICE**

The very contract Hall purports to enforce, the TOS, explicitly provides that YouTube will not be liable to him for *any* "indirect or consequential loss [or] punitive damages" on "*any* claim, regardless of whether the claim asserted is based on warranty, contract, tort, or any other legal theory" based on harm from "*any* content whether submitted by a user or YouTube," "the removal or unavailability of any content," "personal injury … resulting from [his] use of the service," and/or "errors, mistakes, or inaccuracies on the service." Knoll Decl., Ex. 1 at 12-13 (emphases added). That language bars Hall's claims for actual damages on contract and tort theories.

Both the California Court of Appeal and the Ninth Circuit have applied YouTube's limitation of liability provisions to reject damages claims like Hall's. In *Lewis*, the Court of Appeal explained that language concerning "omissions in any content" covered the plaintiff's contract claim seeking to hold YouTube liable for "deletion of her content without prior notice" and affirmed the dismissal of the claim. *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125-28 (2015), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) ("By claiming that YouTube wrongfully deleted her videos … Lewis is claiming that YouTube failed to do as it should by omitting content on its Web site."); *accord Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir. 2018) (limitation of liability provision barred contract claim based on YouTube removing video from its existing location). The same result is warranted here: Hall's damages claims are based on the removal (or omission) of his content and the presence of allegedly offensive content posted by others. Here too, the limitation of liability precludes Hall from recovering actual damages on contract and tort theories.

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed without leave to amend.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  October 16, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _____*/s/ Kelly M. Knoll*_____
　　　　Kelly M. Knoll
　　　　kknoll@wsgr.com

Counsel for Defendant
YOUTUBE, LLC