1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    DASHAY LOUIS HALL,                        Case No. 24-cv-04071-WHO

8                        Plaintiff,

9         v.                                   **ORDER GRANTING MOTION TO
                                               DISMISS**
10   YOUTUBE, LLC,                             Dkt. No. 19.

11                       Defendant.

12

13         Plaintiff DaShay Hall Sr. is a content creator who operated several YouTube channels

14   under the names "Late Night Crew" and "LNC Sports."  Complaint ("Compl."), Dkt. No. 1 ¶ 17.

15   He asserts that YouTube mishandled a variety of matters and is liable for copyright infringement

16   (Count VI), breach of contract (Count I), breach of the implied covenant of good faith and fair

17   dealing (Count III), negligence (Count II), and tortious interference with contractual and

18   prospective economic relationships (Counts IV and V).  YouTube moves to dismiss because

19   Hall's work was not registered, his other claims are insufficiently pleaded, and his tort claims are

20   also barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230.  It is correct,

21   and I will GRANT the motion to dismiss.

22                                  **BACKGROUND**

23          In April 2024, Hall became involved in a public feud with another YouTube user,

24   "MoneyBoy Tr3y," (Tr3y") which led to the exchange of multiple DMCA[1] takedown notices

25   between the two.  *Id.* ¶¶ 18-48.  Hall alleges that Tr3y submitted false copyright claims against

26   Hall's videos, leading to YouTube suspending Hall's channels.  *Id.* ¶¶ 19-20, 22-23.  Hall also

27   ────────────────

28   [1] Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 *et seq.*

1    submitted takedown notices of his own against Tr3y, claiming infringement of Hall's video "Tyler

2    Hero Feat. Christy." *Id.* ¶¶ 115-116.

3            Hall alleges that these takedown notices, as well as complaints about racist hate speech and

4    defamatory content appearing in TR3Y and other's YouTube channels, were mishandled by

5    YouTube. *Id.* ¶ 64.  According to Hall, YouTube reinstated allegedly infringing content uploaded

6    by Tr3y despite Hall's objections and failed to act on his counter-notifications or harassment

7    complaints. *Id.*  Hall also contends that YouTube improperly removed his content, failed to

8    protect him from harassment by other users, and unfairly terminated his channels, all in breach of

9    YouTube's Terms of Service ("TOS") and incorporated Community Guidelines. *Id.* ¶¶ 80-87.[2]

10   He seeks damages and injunctive relief.

11                                    **LEGAL STANDARD**

12           Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

13   if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

14   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

15   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

16   the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

17   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

18   omitted). This standard is not akin to a probability requirement, but there must be "more than a

19   sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require

20   "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

21   relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

22           In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

23   court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

24   _____

25   [2] Attached to Hall's Complaint at Exhibit AA is a purported copy of YouTube's TOS and
     incorporated Community Guidelines.  YouTube notes the attached TOS is for YouTube India
26   ("YouTube in").  YouTube attached the December 15, 2023 version of its TOS and incorporated
     Community Guidelines as Exhibit 1 to the Declaration of Kelly M. Knoll [Dkt. No. 19-2].
27   YouTube's TOS (including the incorporated Community Guidelines) is incorporated by reference
     in the Complaint, as numerous aspects of Hall's claims including the breach of contract claims
28   depend on the TOS.  *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal.
     2020).

*United States District Court*
*Northern District of California*

plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

## DISCUSSION

## I.    COPYRIGHT INFRINGEMENT (COUNT VI)

YouTube argues that Hall's copyright infringement claim must be dismissed because the work at issue ("Tyler Hero Feat. Christy") was not registered prior to the lawsuit as required by 17 U.S.C. § 411(a). Motion to Dismiss ("MTD"), Dkt. No. 19, at 6:14-15. It submits the copyright registration application for the work at issue from the U.S. Copyright Office. I take judicial notice of it; courts may take judicial notice of copyright registrations as public records. See *Kiely v. Universal Music Grp.*, No. LACV194826MWFSSX, 2019 WL 9443183, at *2 (C.D. Cal. Dec. 12, 2019) (taking judicial notice of a copyright registration and dismissing pro se claim for failure to

1   allege pre-filing registration); *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063

2   (C.D. Cal. 2017) ("Courts routinely take judicial notice of documents from the Copyright

3   Office.").  The application is dated August 10, 2024, approximately one month after this lawsuit

4   was filed on July 5, 2024.  Knoll Decl., Ex. 9.  In addition, YouTube points to the Copyright

5   Claims Board complaint Hall filed *against* the alleged infringer which admits that, as of August

6   10, 2024, the work "Tyler Hero Pt. 1" had not been registered by the Copyright Office.  *See* Knoll

7   Decl., Ex. 3.[3]

8        Hall does not dispute this evidence or suggest that he registered the work prior to July 5,

9   2024.  Instead, he argues that courts do not require "exhaustive proof of registration at the

10  pleading stage" and that the Complaint "alleges sufficient facts to establish ownership and

11  infringement."  Opposition to Defendant's Motion to Dismiss ("Oppo."), Dkt. No. 23, 17:5-12.

12       Hall does not dispute that the video at issue, "Tyler Hero Feat. Christy," was registered

13  over a week after the complaint was filed.  The Copyright Act provides that "no civil action for

14  infringement ... shall be instituted until preregistration or registration of the copyright claim has

15  been made in accordance with this title."  17 U.S.C. § 411(a).  In other words, a plaintiff must

16  obtain copyright registration before initiating an infringement suit.  *See id.*  The Supreme Court

17  has held that a copyright owner cannot sue for infringement until the Copyright Office registers a

18  copyright.  *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019).

19  His copyright infringement claim therefore fails as a matter of law by not meeting the threshold

20  requirement of 17 U.S.C. § 411(a).

21       District courts have split on the issue of whether to allow plaintiffs leave to amend an

22  existing, but premature at the time of filing suit copyright infringement claim or whether the claim

23  must be dismissed and refiled (if appropriate) in a second suit.  *See Roblox Corp. v. WowWee*

24  *Grp. Ltd.*, 660 F. Supp. 3d 880, 890 (N.D. Cal. 2023) (discussing cases on both sides of the divide

25

26  _____

27  [3] In his Complaint, Hall refers to the work allegedly infringed by the name "Tyler Hero Feat. Christy."  Comp. ¶¶ 115-116.  The documents from the Copyright Office, including the Copyright Claims board appeals refer to the work as  "Tyler Hero Pt. 1."  *See* Knoll Decl., Exs. 3, 9. YouTube noted this discrepancy in its Motion (MTD at 6 n.4) and Hall did not address it or argue

28  the works are not in fact the same in his Opposition.

and ultimately dismissing claim without prejudice but also without leave to amend as "permitting plaintiffs to cure their failure to register the copyright before suing would undermine" Supreme Court precedent). I agree with other courts in this District that leave to amend cannot be provided and instead Hall's copyright claim must be dismissed from this case as plaintiff had not registered the work before filing. *See Roblox Corp. v. WowWee Grp. Ltd.*, 660 F. Supp. 3d at 890; *Kifle v. YouTube LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021) (dismissing claim because "the plain language of § 411(a) refers to the beginning of a lawsuit, not the filing of an amended pleading"); *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-3132-WHO, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019) (stating that a plaintiff "cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending [the plaintiff's] pending complaint"); *Izmo, Inc. v. Roadster, Inc.*, 2019 U.S. Dist. LEXIS 93568 (N.D. Cal. June 4, 2019) (dismissing plaintiff's copyright infringement claims without prejudice and not permitting amendment to cure the plaintiff's failure to register its copyright).

Hall relies on *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) and *Scahill v. D.C.*, 909 F.3d 1177 (D.C. Cir. 2018), to argue that registration is a procedural defect that may be cured during litigation. Oppo. 17:15-22. These cases are distinguishable. *Reed* clarified that § 411(a)'s registration requirement is not jurisdictional, but did not abrogate the requirement that registration must precede suit. 559 U.S. at 171. *Scahill*, a case outside the copyright context, addressed exhaustion principles under different statutory schemes and does not override the express holding in *Fourth Estate* that copyright registration is a mandatory precondition to bringing suit. 909 F.3d at 1179.

Hall's copyright infringement claim was unripe at the time of filing and must be dismissed for failing to meet the threshold requirement of 17 U.S.C. § 411(a).[4] If Hall wishes to proceed

---

[4] To have standing under 17 U.S.C. § 501(b), a plaintiff must be the legal or beneficial owner of an exclusive right under the copyright. As currently alleged, Hall also apparently lacks standing to bring a copyright claim. The Copyright Office registration identifies "Late Night Crew LLC" not Hall personally, as the copyright owner. *See* Knoll Decl., Ex. 9; *see also* Knoll Decl., Ex. 4 (Copyright Claims Board dismissing claim in part because claimant did not "specify how DaShay L. Hall, Sr. is the legal or beneficial owner of the work"). Hall has not alleged any facts establishing such ownership or a transfer of rights to him and his sole assertion that he is the "creator" of the work is insufficient. Compl. ¶ 115. Hall cites *Silvers v. Sony Pictures*

United States District Court
Northern District of California

1    with his Copyright Act claim, he must file a new lawsuit. *See Fourth Estate*, 586 U.S. at 307

2    (explaining that "a copyright claimant may commence an infringement suit[] when the Copyright

3    Office registers the copyright.").

4    **II.    BREACH OF CONTRACT CLAIMS (COUNTS I, III)**

5         Hall's breach of contract claims rest on allegations that YouTube mishandled his DMCA

6    notices and counter-notices, failed to reinstate his content, failed to take down infringing content,

7    wrongfully terminated his channels, and failed to remove harassing videos posted by other users in

8    breach of YouTube's promises in its TOS and Community Guidelines. Compl. ¶¶ 56-59, 71-86.

9    YouTube argues that he has failed to plead a claim for breach of contract because he does not

10   identify which provisions in the TOS or Community Guidelines he believes YouTube breached.

11   Even if he had identified specific provisions, however, YouTube also contends that breach of

12   contract claims would be precluded given that the TOS grant YouTube broad discretion to remove

13   content and suspend accounts. MTD at 10:4-20.

14        To state a breach of contract claim under California law, a plaintiff must identify the

15   specific contractual provision breached, or at least plead the legal effect of the agreement. While

16   it is not necessary to quote or attach the contract, a complaint must provide sufficient detail to give

17   fair notice of the contractual obligation allegedly violated. *See Construction Protective Servs.,*

18   *Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 198–99 (2002). Courts have consistently dismissed

19   breach of contract claims where plaintiffs fail to allege the relevant promise or term that was

20   supposedly breached. *See e.g., LevelFields, Inc. v. Reddit, Inc.*, No. 24-CV-02760-WHO, 2024

21   WL 5161951, at *1 (N.D. Cal. Dec. 17, 2024) (dismissing contract claim where the plaintiff failed

22   to heed the Court's direction "to identify the particular language in the Agreement it contends that

23   Reddit breached and provide support for its interpretation of [a particular] term" in the complaint);

24   *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (holding that "[i]n an

25

26   ─────────────────

27   *Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005), to argue that a plaintiff need not be the legal
     titleholder to have standing to sue for infringement if the plaintiff has a beneficial interest in the
     registered copyright entity. Oppo. 18:3-9. But Hall's Complaint does not allege that he was

28   assigned any such right from Late Night Crew LLC, nor does he allege or provide documentation
     from the Copyright Office of any transfer of rights.

United States District Court
Northern District of California

1    action for breach of a written contract, a plaintiff must allege the specific provisions in the contract

2    creating the obligation the defendant is said to have breached.").

3        Hall does not identify any specific provision of the TOS that imposes a duty on YouTube

4    to act on user reports or to restore content. That by itself requires dismissal with leave to amend

5    of the breach of contract claims. *See LevelFields*, 2024 WL 5161951 *1. The cases Hall cites in

6    his Opposition stand for a different proposition, that a breach of contract claim need not quote or

7    attach the contract and may instead plead its legal effect. Oppo. 20:15-21:3; *see also Construction*

8    *Protective Services, Inc. v. TIG Specialty Ins. Co.*, 29 Cal.4th 189, 198-99 (2002); *Miles v.*

9    *Deutsche Bank National Trust Co.*, 236 Cal.App.4th 394, 402 (2015); *Pneucrete Corp. v. U.S.*

10   *Fidelity & Guaranty Co.*, 7 Cal.App.2d 733, 741-742 (1935). The issue here is that Hall is

11   alleging that YouTube breached specific promises in either its TOS or Community Guidelines, but

12   does not identify which provisions were violated.

13        Hall's cases are distinguishable. In *Construction Protective Services*, for example, the

14   plaintiff adequately alleged the contractual obligations at issue, which gave the defendant fair

15   notice of the claim. 29 Cal.4th at 190. By contrast, Hall fails to identify even the basic terms or

16   promises from YouTube's TOS that he contends were breached. In *Miles*, the complaint identified

17   the contractual duty breached—namely, the requirement that foreclosure proceedings be

18   conducted lawfully—which was sufficient to support the claim. 236 Cal.App.4th at 402. Hall has

19   not provided comparable specificity. Finally, *Pneucrete Corp.* concerned whether a surety's

20   liability was triggered by performance under a bond, which was not disputed as to its basic terms.

21   7 Cal. App. 2d at 742. Here, the TOS and Community Guidelines cover dozens of topics; without

22   identifying the specific provisions that Hall believes YouTube violated, YouTube does not have

23   fair notice of the basis or bases of Hall's contract-based claims.

24        Hall's cases do not relieve him of his burden to identify what promises YouTube allegedly

25   made and broke. While a plaintiff need not quote or attach the contract, he must still describe its

26   terms with enough detail to state a plausible claim. Hall has not done so. His implied covenant

27   claim fails for the same reason. "[T]o state a claim for breach of the implied covenant of good

28   faith and fair dealing, a plaintiff must identify the specific contractual provision that was

United States District Court
Northern District of California

7

frustrated." *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 985 (N.D. Cal. 2024) (citation omitted).

Even more problematic for Hall, YouTube's TOS expressly reserves broad discretion to YouTube to remove or retain content and disclaims any obligation to host content. YouTube's TOS specifically states that "YouTube is under no obligation to host or serve Content," and that "we reserve the right to remove or take down some or all of such Content in our discretion." *See* Knoll Decl., Ex. 1 at 4, 10; *see also Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1038 (2022) (YouTube's TOS "contain no provision purporting to constrain defendants' conduct as publishers" and that YouTube's community guidelines "in no way purport to bind defendants to publish any given video, or to remove a video only for violation of those guidelines."); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (breach of contract "claim necessarily fails, however, because Twitter's terms of service expressly state that they reserve the right to 'suspend or terminate [users'] accounts ... for any or no reason' without liability.").

This broad provision would likely defeat Hall's breach of contract claim based on an express provision, and would likewise preclude his implied covenant claims. *See Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (an implied covenant cannot create duties that contradict express terms of the contract). Hall's allegations do not identify any specific benefit under the TOS that YouTube wrongfully withheld from him—particularly one that the TOS did not already reserve YouTube the right to deny in its discretion. Because the TOS explicitly allows YouTube to remove content and terminate accounts without cause, Hall cannot plausibly claim that these actions unfairly deprived him of a promised benefit.

Hall relies on *Carma Devs (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342 (1992) to argue that YouTube had an obligation to exercise discretion under the TOS in good faith. Oppo. 28:17-20. But *Carma Devs* concerned a commercial lease agreement where the landlord's termination right was subject to implied limitations. Here, YouTube's TOS explicitly reserves broad unilateral discretion to remove content and terminate accounts. *See* Knoll Decl., Ex. 1 at 10 ("[YouTube] reserve[s] the right to remove or take down some or all of such Content in our

United States District Court
Northern District of California

discretion.").  "[A]s a general matter, implied terms should never be read to vary express terms."
*Carma Devs*., 2 Cal. 4th at 374.  Hall's Complaint alleges no facts showing that YouTube
exercised its discretion in bad faith or otherwise in a manner prohibited by the contract.[5]

Hall's contract claims are dismissed with leave to amend.  If he chooses to amend his
claims, he must identify the specific provisions of YouTube's TOS or Community Guidelines that
he believes YouTube violated, as well as facts that show YouTube made acts in bad faith or that
YouTube otherwise took acts with respect to him that went beyond its handling of his DMCA
notices and counter-notices, closing or reopening his channels, or failing to remove content he
found objectionable.[6]

## III.     TORT CLAIMS (COUNTS II, IV, V)

Hall alleges three tort claims for negligence and tortious interference with contract and
prospective economic advantage based on his claims that YouTube negligently failed to process
his DMCA notices (asking YouTube to take down infringing content) and DMCA counter-
notifications (seeking to restore Hall's own content), and allowed harassing videos to remain up.
Compl. ¶¶ 63-67, 89-98, 100-113.  He contends that these failures by YouTube disrupted his
contracts with sponsors and his relationship with his viewers, costing him income.  *Id*. ¶¶ 91-93.
He argues that YouTube had a duty, both statutory and contractual, to process the DMCA notices
claims in a timely and responsible manner and to take action against content that violated
YouTube's Community Guidelines.  *Id.* ¶ 121.

YouTube moves to dismiss the tort claims, arguing that the negligence claims fail because
Hall failed to identify any facts that could support YouTube owing a duty of care to him with
respect to its content moderation actions, and the interference claims fail because no plausible

[5] Hall also relies on *Gonzalez v. Google LLC*, 2 F.4th 871, 899 (9th Cir. 2021), vacated and
remanded, 598 U.S. 617 (2023), and *rev'd sub nom. Twitter, Inc. v. Taamneh*, 598 U.S. 471
(2023).  That case does not help Hall because there Section 230 immunity applied to all claims
*except* a narrow set that alleged liability under the Anti-Terrorism Act (ATA) based on
defendant's alleged "revenue sharing" with a terrorist organization.

[6] YouTube opposes leave to amend, in part because it believes Hall is not proceeding pro se in
light of statements Hall made in videos posted to his channels regarding this litigation.  *See* Reply
at 14 n.8.  Whether or not Hall has secured legal help in drafting his Complaint or Opposition, I
will still grant him a chance to amend his breach of contract and tort claims as discussed below.

United States District Court
Northern District of California

1    facts are alleged to support a claim that YouTube knew of and intended to disrupt Hall's contracts

2    and because no specific or probable contracts have been identified.  Next, even if those pleading

3    deficiencies could be corrected, YouTube asserts that the tort claims still fail, as all of the conduct

4    alleged by YouTube falls within the broad immunity provided by Section 230 of the

5    Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230").  MTD 14:14-16:25.[7]

6    Finally, YouTube contends that its editorial decisions, including whether to restore content or

7    terminate accounts, are protected under the First Amendment.

8           Hall's negligence claim fails under traditional tort principles.  Under California law, there

9    is no duty to protect others from conduct of third parties – here the alleged allowing of content on

10    YouTube sites that violated Hall's alleged copyrights or harassed him or his family – absent the

11    existence of a legally recognized "special relationship" between the parties giving rise to an

12    "affirmative duty" to protect.  *See Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 419–

13    20 (2022).  Online platforms do not owe their users a general duty of care to manage or investigate

14    DMCA takedown notices or counter-notices or to respond harassment reports unless the contract

15    entered into "itself imposes a duty to protect."  *Id.* (internal citations omitted); *see also Ginsberg v.*

16    *Google Inc.*, 586 F. Supp. 3d 998, 1009 (N.D. Cal. 2022) (no "authority for the proposition that

17    Google's publication of guidelines for its app developers creates an enforceable duty to any

18    purchaser of an Android device").

19           As to the tortious interference with existing contracts, Hall fails to identify any specific

20    relationships or contracts with which YouTube allegedly interfered.  Vague references to Hall's

21    "sponsors" or "advertisers" with whom he alleged that YouTube's acts interfered are insufficient

22    to support a claim under California law absent plausible allegations that YouTube knew Hall's

23    specific sponsors or advertisers.  Compl. ¶ 89, 91-92, 98; *see Swipe & Bite, Inc. v. Chow*, 147 F.

24    Supp. 3d 924, 935 (N.D. Cal. 2015) (holding that a claim requires pleading defendant's knowledge

25    of specific contracts with "specific customers"); *see also AdTrader, Inc. v. Google LLC*, No. 17-

26

27    [7] Section 230 provides immunity from liability to "(1) a provider or user of an interactive
      computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a

28    publisher or speaker (3) of information provided by another information content provider."
      *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009), as amended (Sept. 28, 2009).

United States District Court
Northern District of California

1    CV-07082-BLF, 2018 WL 3428525, at *5 (N.D. Cal. July 13, 2018) (dismissing claim where the

2    "FAC alleges that AdTrader had contractual relationships with over two hundred web publishers.

3    [] However, the FAC does not plead sufficient factual allegations that show that Google

4    purportedly interfered with a specific contract for each web publisher.").

5         Similarly, to allege tortious interference with prospective economic advantage, Hall must

6    identify the existence of an "'economic relationship with some third party that contains the

7    probability of future economic benefit to the plaintiff,'" but he has not done so, much less alleged

8    that YouTube knew of that specific relationship and intended to disrupt it.  *Olson v. World Fin.*

9    *Grp. Ins. Agency, LLC*, No. 24-CV-00477-EJD, 2024 WL 3498572, at *3 (N.D. Cal. July 19, 2024

10   (quoting *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 509 (2017)).[8]  The

11   Ninth Circuit requires more than a contractual breach—it must be wrongful conduct.  *See Song Fi*

12   *Inc., v. Google, Inc.*, 108 F. Supp. 3d 876, 887-88 (N.D. Cal. 2015) (dismissing a claim for

13   tortious interference and finding that removing a video from YouTube did not qualify as an act

14   that "was 'wrongful' apart from the tortious interference itself").

15        More fundamentally, Hall's tort claims are based only on YouTube's content moderation

16   acts (taking down content or channels or allowing content and channels), and for that reason are

17   barred by Section 230 immunity.  Courts have consistently held that online platforms are not liable

18   for their decisions to publish, remove, or allow third-party content.  *See Dyroff v. Ultimate*

19   *Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019) (holding that algorithmic

20   recommendations are protected by Section 230); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th

21   Cir. 2009) (failure to remove content cannot support tort liability given Section 230).  Hall's

22   allegations are premised on YouTube's decisions to allow or disallow specific videos and to host

23   or shut down channels, which all falls squarely within Section 230 immunity.

24        Hall attempts to escape this bar by citing *Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846

25   _____

26   [8] "Intentional interference with prospective economic advantage has five elements: (1) the
     existence, between the plaintiff and some third party, of an economic relationship that contains the
27   probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the
     relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual
28   disruption of the relationship; and (5) economic harm proximately caused by the defendant's
     action." *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(9th Cir. 2016), where the Ninth Circuit found that a "special duty" existed supporting a negligence claim given that an internet service provider's failure to warn used known information about how known "third parties targeted and lured victims through" the site. *Id*. at 851.  Because the "failure to warn claim has nothing to do with [the site's] efforts, or lack thereof, to edit, monitor, or remove user generated content," the claim was not barred by Section 230.  *Id*. at 852. *Doe* did not involve the moderation of third-party content but rather the failure to warn of offline criminal conduct unrelated to publishing decisions.  By contrast, Hall's theory is entirely rooted in YouTube's management—or mismanagement—of user-generated videos and channels.  Oppo. 38:7-16.  That conduct is at the heart of, and is protected by, Section 230.

Based on the current allegations, all three of Hall's tort claims fails to state a claim and are barred by Section 230.  These claims will be dismissed with leave to amend, in case Hall is able to allege an actionable tort claims that falls outside the scope of Section 230's immunity.

### CONCLUSION

Hall's copyright claim is DISMISSED without prejudice but without leave to amend in this case.  Hall's breach of contract and tort claims are DISMISSED with leave to amend.  Any amended complaint must be filed within twenty two (22) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: May 5, 2025

William H. Orrick
United States District Judge