## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DASHAY HALL SR., ) | <u>CASE NO.</u>:  3:24-cv-04071 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **FIRST AMENDED COMPLAINT** |
| ) | |
| YOUTUBE, LLC ) | |
| ) | |
| Defendant, ) | |

### FIRST AMENDED COMPLAINT OF DASHAY HALL SR.

## I. PRELIMINARY STATEMENTS

## A. Introduction

1.  This is Plaintiff DaShay Hall Sr.'s First Amended Complaint, filed with leave of

    Court following the Order dated May 5, 2025. Plaintiff brings this action for

    monetary damages and injunctive relief against Defendant YouTube, LLC

    ("YouTube") for its multiple and ongoing breaches of contract, its pervasive

negligence in the operation and management of its platform, its tortious

interference with Plaintiff's established and prospective business and economic

relationships, and other unlawful actions and omissions.

2.  These actions and failures by YouTube, many of which constitute YouTube's own

direct conduct, policy misapplications, and failures to act reasonably in the face

of known harm and abuse, fall outside the protections of Section 230 of the

Communications Decency Act (47 U.S.C. § 230).

3.  YouTube's conduct has directly and proximately caused significant and ongoing

harm to Plaintiff's business, professional reputation, and personal well-being.

4.  This harm includes, but is not limited to, substantial financial losses, severe

emotional distress, and subjection of Plaintiff and Plaintiff's family to severe

harassment, doxxing, and credible threats of physical violence (including specific

threats of confrontation in Plaintiff's home state of Oklahoma, corroborated and

amplified by third parties, including a former law enforcement officer now elected

official, on YouTube's platform), which YouTube knowingly failed to prevent,

mitigate, or adequately address despite actual and repeated notice and despite

clear on-platform admissions of such conduct by the perpetrators.

**B. Jurisdiction and Venue**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

because the claims arise under the laws of the United States, including the Digital Millennium

Copyright Act (DMCA), 17 U.S.C. § 512 (Exhibit GG), and the Copyright Act, 17 U.S.C. § 101 et

Seq.

6. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties

are citizens of different states and the amount in controversy exceeds $75,000, exclusive of

interest and costs.

7. This Court has personal jurisdiction over Defendant YouTube, LLC because it is

headquartered in San Bruno, California, and conducts substantial business within the

Northern District of California.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because

Defendant YouTube, LLC is subject to personal jurisdiction in this district and a substantial

part of the events or omissions giving rise to the claim occurred in the Northern District of

California.

9. Additionally, Defendant YouTube's Terms of Service (Exhibit AA), to

which Plaintiff agreed, specify that disputes shall be resolved in the federal or state courts

located in Santa Clara County, California.

## C. Parties

10. Plaintiff, DaShay Hall Sr. ('Plaintiff'), is a natural person residing in Oklahoma County of the state of Oklahoma and is a 'person' as defined by 47 U.S.C. § 153(39).

11. Defendant YouTube, LLC ('YouTube'), is a video-sharing company headquartered in San Bruno, California, and is a 'person' as defined by 47 U.S.C. § 153(39).

12. The above-named Defendant, YouTube, LLC, and its subsidiaries and agents, are collectively referred to as 'Defendant.'

13. Plaintiff is informed and believes that at all relevant times, Defendant was acting within the course and scope of its operations and was acting with full knowledge and consent of its employees and agents. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, Defendant.

## II. FACTUAL ALLEGATIONS

## A. Plaintiff's YouTube Channels and Business Model

14. Plaintiff, DaShay Hall Sr., operates multiple YouTube channels including "Late Night Crew," "Late Night Crew News" (later terminated by YouTube, see EXHIBIT X – Mail from Youtube regarding disabling of Plaintiff's channel LNC News dt. 14.06.2024..pdf), "LNC Sports," and "#LNC Wrestling" (collectively, "Plaintiff's Channels"). These channels feature original content including live commentary on current events, news analysis, community interaction shows, vigorously edited shorts with original commentary, custom captions, and music, and original livestreams often featuring unique daily introductory segments reflecting community support

and donations.

15. Plaintiff's Channels served as Plaintiff's primary source of income, derived from AdSense, Channel Memberships, Super Chats, direct donations, and sponsorships, all contingent upon the good standing and monetization of Plaintiff's Channels.

**B. Wrongful Demonetization for Alleged "Reused Content"** (Commencing March 25, 2024)

16. On or around March 25, 2024, YouTube suspended all monetization on Plaintiff's channel, "The Real Late Night Crew," for approximately three months, until June 24, 2024, alleging violations of its "reused content" policy. (Exhibit II).

17. YouTube's support manager "Emma," on March 27, 2024, reiterated this vague justification in an email. (Exhibit JJ).

18. Plaintiff appealed this decision on March 25, 2024; YouTube rejected the appeal via email on the same day, stating they were "not able to reaccept you into the YouTube Partner Program at this time." (Exhibit KK).

19. In multiple chat sessions with YouTube Support on March 27, 2024 (Exhibit LL), Plaintiff vehemently disputed the "reused content" allegation, explaining the originality of his content. Despite Plaintiff's direct and repeated requests for YouTube to identify any specific videos or content portions that allegedly violated this policy, YouTube, through its representative "Emma," explicitly refused to provide such specifics, stating, "in order to ensure we maintain a healthy ecosystem and due to the policies we've implemented to avoid circumvention of our policies, we're unable to provide as to which specific videos are Reused content." Emma also acknowledged during these chats, "Our system is not perfect," yet maintained the appeal decision by "dedicated specialists" was "final" and that the appeal did not contain "enough

contexts and visuals of your video creation process."

20. This wrongful demonetization directly caused Plaintiff significant financial loss.

21. Exhibits related to Reused Content Demonetization: EXHIBIT II, EXHIBIT JJ, EXHIBIT KK,

EXHIBIT LL, EXHIBIT X.

**C. Initial Racially Charged Attack and YouTube's Inadequate Response** (April 26, 2024)

22. On April 26, 2024, two days before the first copyright takedown targeted against Plaintiff,

Plaintiff experienced a racially charged attack initiated by "MONEYBOY TR3Y" (Mark Avington).

MONEYBOY TR3Y attempted to embarrass Plaintiff by making multiple racist remarks and

posting images of Plaintiff's wife on YouTube, specifically targeting their interracial marriage.

Plaintiff reported these actions to YouTube. While YouTube resulted in the removal of one

post, the more egregious posts and a video using Plaintiff's wife's image were initially taken

down but then reinstated by YouTube despite Plaintiff later providing evidence of an ongoing

Copyright Claims Board (CCB) case.

**D. Commencement of False DMCA Takedowns and YouTube's Mismanagement** (April 28 -
May 1, 2024)

23. On April 28, 2024, a false DMCA takedown notice was filed against Plaintiff's content by

MONEYBOY TR3Y. Plaintiff promptly followed YouTube's established procedures and filed a

detailed counter-notification with valid copyright defenses, proving the audio in question,

"Built To Last (Instrumental)" by NEFFEX, was sourced from the YouTube Audio Library (Exhibit

F). Despite this, YouTube did not take immediate corrective action.

24. On April 29 and April 30, 2024, two additional false DMCA takedowns were filed by

MONEYBOY TR3Y against Plaintiff's content in rapid succession. These takedowns were based

on claims of copyright infringement for a specific song, "Feel Me" by MONEYBOY TR3Y, even though Plaintiff's videos contained no music in some parts and different, properly licensed or Fair Use songs in others, including "Built To Last (Instrumental)" by NEFFEX from the YouTube Audio Library, and "Ain't No Stoppin' Us Now" by McFadden & Whitehead used under Fair Use. This demonstrates a blatant disregard for the DMCA process. (EXHIBIT B, C, D, E, G).

25. Specifically regarding these false DMCA claims:

a. The First Claim (April 28, 2024) against Plaintiff's video titled "Woman Goes To Have A Beer, But Forgets THIS In The Car!" alleged infringement of "Feel Me" by MONEYBOY TR3Y. Plaintiff's video contained the song "Built To Last (Instrumental)" by NEFFEX, licensed from the YouTube Audio Library. No elements of "Feel Me" were used. Additionally, the takedown notice also affected Plaintiff's video "Shocking Turn of Events: Dolton Trustees vs Mayor Henyard," where the song "Ain't No Stoppin' Us Now" by McFadden & Whitehead was used, which is protected by the Fair Use Act. (EXHIBIT F).

b. The Second Claim (April 29, 2024) against Plaintiff's video titled "YSL Shannon Stillwell Was STABBED In Jail!" alleged infringement of "Feel Me" by MONEYBOY TR3Y. Plaintiff's video contained the song "Built To Last (Instrumental)" by NEFFEX, licensed from the YouTube Audio Library. No elements of "Feel Me" were used. (EXHIBIT F & Exhibit AA).

c. The Third Claim (April 30, 2024) against Plaintiff's video titled "Uncovering Dolton Mayor Tiffany Henyard's Alarming 1st Amendment Violation" alleged infringement of "Feel Me" by MONEYBOY TR3Y. Plaintiff's video contained no music at all, only speech by Cara Wilson and Plaintiff, and a Hooked-On Phonics Commercial with its own music. No elements of "Feel Me"

were used. YouTube never notified Plaintiff of this takedown. (Exhibit G).

d. The Fourth Claim (May 1, 2024) against Plaintiff's video titled "I Am The Leader Dolton

Mayor Tahoe Tiff Remix" (13:27 long) alleged infringement by MONEYBOY TR3Y of his song

"Feel Me" from timestamp 00:13-22:16, an impossible duration for the video. The video was a

live remix by Plaintiff using audio from a Dolton Regular Board Meeting and the song "Stuntin

Like My Daddy" by Birdman and Lil Wayne. No elements of "Feel Me" were used. (Exhibit H).

26. On April 29, 2024, anticipating continued abuse, Plaintiff proactively contacted YouTube

support (Exhibit C) warning them that MONEYBOY TR3Y would likely submit another false
claim.

Despite pleas, YouTube provided no meaningful help, resulting in the wrongful suspension of

Plaintiff's main channel, "Late Night Crew," on April 29, 2024.

27. Following the suspension, Plaintiff emailed YouTube on April 30 and May 1, 2024,

requesting reinstatement; these went unacknowledged. (Exhibit H).

28. YouTube failed to properly process Plaintiff's counter-notifications as required by 17 U.S.C.

§ 512(g), often rejecting them for legally insufficient reasons. (See EXHIBIT M, EXHIBIT N,

EXHIBIT MM). This contradicts YouTube's public statements that it is "not a court of law"

[YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 0:54] and "actively

works to identify and prevent takedown requests targeting videos that utilize fair use"
[YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 4:00].

29. YouTube support provided misinformation, attributing claims to "music labels" instead of

"MONEYBOY TR3Y." (See EXHIBIT BB).

30. Exhibits related to False DMCA Takedowns and Mismanagement: (EXHIBITS A, B, C, D, E, F,
G, H, J, M, N, Q, AA, BB, EE, FF, GG, MM), YouTube Videos

(https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7,

https://youtu.be/bF7c6PaaVQo?si=6jzxIoR6TNtyI7F2),

### E. On-Platform Admissions of Misconduct and System Abuse by Claimants MONEYBOY TR3Y
### (MB) and Troi Torain (TT)

31. MONEYBOY TR3Y (Mark Avington) Admissions:

a. "On or around June 1, 2024, in a public YouTube livestream titled 'Reviewing Today's Thornton Township Meeting 6-1-24' (NN), MB admitted to conduct including: (i) at approximately 22:10, illegally disabling Plaintiff's first channel; (ii) at approximately 26:50, his belief that YouTube would not penalize his actions; and (iii) at approximately 21:20, his plan to retaliate against Plaintiff ('LNC') and Plaintiff's associate Ms. Hayes ('BB') for legitimate copyright actions."

b. "In a YouTube livestream titled 'Super Victim @Burgundybluecommentary Has Manic Episode During Her Lives & On Her Community Wall' (Exhibit VV), MB admitted to: (i) at approximately 35:55, attacking Plaintiff ('LNC'); (ii) at approximately 1:13:10, that Ms. Hayes's super chat to Plaintiff caused them (MB and associates) to harass her; (iii) at approximately 1:27:00, harassing Ms. Hayes; (iv) at approximately 1:28:35, willingness to illegally play Plaintiff's video for $100; and made numerous vulgar and harassing statements against Plaintiff and Ms. Hayes."

c. "In a YouTube livestream titled '@Investigatenadvocate Vs Errbody Part 2' (Exhibit OO), MB stated: (i) at approximately 8:00, that YouTube had previously shut down one of his streams for similar misconduct; (ii) at approximately 22:40, solicited donations for conducting an 'illegal stream' of court proceedings, stating, 'Because I could be held in contempt for this' (a

Judge is later heard on this stream at 35:40 stating the livestream was illegal)."

d. "On or around May 29, 2024, in a YouTube livestream titled '@Burgundybluecommentary Continues To Lie Shade Cry & Recruit People To Attack @Investigatenadvocate' (EXHIBIT PP, EXHIBIT S), MB admitted: (i) at approximately 28:52 and 54:00, that Jedidiah Brown ('JB') doxxed Ms. Hayes ('BB'), and that this was because BB did not denounce Plaintiff."

e. "On or around June 3, 2024, in a YouTube livestream titled 'Despite Records Showing @Burgundybluecommentary Isnt Registered Voter N Dolton She Continues 2 Lie' (Exhibit QQ), MB admitted: (i) at 1:23:50, to harassing BB only because of his issue with Plaintiff; (ii) at 1:25:20, to harassing BB every time she goes live; (iii) at 1:27:50, to sending his audience to harass other channels; (iv) at 2:03:52, that in his 20s he would have shot Plaintiff; and (v) at 2:16:40, to having a team of people to false strike channels."

32. Troi Torain (TT) Admissions/Statements on Copyright System Abuse:

a. "On or around January 13, 2025, Troi Torain, in a YouTube video titled 'Copyright help for YouTubeInstagram content creators (CCB)' (which was subsequently made private by Torain, summary provided as Exhibit RR), admitted to and advocated for misusing copyright systems, including: (i) stating 'days of Fair Use are over' if 'attacking' a brand [1:35]; (ii) advising filing copyright claims for doxxing [6:51]; (iii) instructing filing CCB claims for the 'SOLE purpose of giving YouTube court papers to keep the video down,' regardless of merit [8:10]; (iv) admitting to filing takedowns to illegally unmask anonymous channels; (v) admitting he 'extorts people with a CCB claim'; and (vi) dismissing the illegality of filing false copyright claims (a violation of 17 U.S.C. § 512(f)) [1:03:20]."

**F. Escalating Harassment, Threats (Including Jedidiah Brown's Threats and Actions in**

**Oklahoma, and Corroboration by Mary Avant), Doxxing, and YouTube's Failure to Act**

33. On May 2, 2024, Plaintiff contacted YouTube support ('Olivia') about racist hate speech by MONEYBOY TR3Y against his wife; no immediate meaningful action was taken. (EXHIBIT I).

34. On May 3, 2024, Plaintiff chatted with 'Valdrienne' about ongoing harassment/false DMCA claims; no meaningful action. (EXHIBIT J).

35. On May 4, 2024, MONEYBOY TR3Y livestreamed threats and solicited donations for more illegal claims. Plaintiff reported this in real-time to agents 'Lee' and 'Erin'; response was inadequate. (EXHIBIT K).

36. On May 6, 2024, MONEYBOY TR3Y began using Plaintiff's content to further harass Plaintiff's wife, leading to additional copyright takedowns that ultimately led to the disabling of Plaintiff's YouTube channel 'The Real Late Night Crew'. (Exhibit L)

37. On May 11, 2024, MONEYBOY TR3Y and Jedidiah Brown ('JB') began coordinated harassment. Mark Avington (MONEYBOY TR3Y), using information Plaintiff believes was unlawfully obtained from YouTube's DMCA process, shared Plaintiff's address and phone number with JB. JB then made direct threats against Plaintiff and his family, posting images of airline tickets online indicating his imminent intention to travel from Chicago, IL to Oklahoma City, Oklahoma (Plaintiff's city of residence) on May 12, 2024, to physically confront Plaintiff. (Exhibit O).

38. On or around May 12, 2024, Jedidiah Brown arrived in Oklahoma City, actively seeking a physical confrontation, necessitating Plaintiff contacting the FBI. (EXHIBIT P).

39. Corroborating these threats, on or around May 24, 2024, in a YouTube video titled 'Dear

LNC' (EXHIBIT SS), JB appeared with former police officer Mary Avant ('MA'). MA explicitly confirmed JB's intention of coming to Oklahoma for a physical confrontation with Plaintiff and stated her willingness to do the same [8:30]. MA reiterated she would come to Oklahoma City [9:20]. MA admitted Plaintiff called her the day JB came to Oklahoma to try to stop JB's illegal behavior, and MA mocked Plaintiff [9:50].

40. The harassment continued daily. On May 13, 2024, MONEYBOY TR3Y and JB conducted a defamatory stream against Plaintiff.

41. On May 24, 2024, the harassment campaign escalated against Plaintiff's colleague, Ms. Lolita Hayes (Burgundy Blue Commentary), including emails, phone calls, and defamatory YouTube videos/Facebook posts by MB, JB, and associates. (EXHIBIT S).

42. In a YouTube livestream titled 'BB deleted her video, this is why! Fraud!' (Exhibit TT), JB further admitted and engaged in threatening behavior against Ms. Hayes ('BB') and Plaintiff ('LNC'), including: (a) acknowledging his '48 hour notice' (a threat to BB) caused her actions [4:04]; (b) making further threats [6:40, 8:00, 32:34, 35:34]; (c) admitting to doxxing BB's real name and other personal details; (d) acknowledging he knew BB filed a police report against him, yet persisting; and (e) threatening BB with a police officer who had also allegedly threatened Plaintiff.

43. In a YouTube livestream titled '48-hour notice' on May 28, 2024 (Exhibit U), Jedidiah Brown continued his campaign of threats, stating at 21:50 that he would dox Ms. Hayes if she did not denounce Plaintiff within 48 hours. Brown further admitted at 26:53 that doxxing is 'part of his job,' and at 34:27 stated if BB denounces LNC the harassment will 'stop'.

44. On May 25, 2024, Plaintiff contacted YouTube about threats against his life/family and

doxing; no action was taken by YouTube. (EXHIBIT T).

45. On June 4, 2024, Plaintiff informed YouTube of a police report filed by Ms. Hayes regarding the harassment by Avington and Brown; YouTube ignored this report and took no action. (EXHIBIT Z).

46. Exhibits related to Harassment, Threats, and Doxxing: (K, O, P, S, T, U, W, Z, NN, OO, PP, QQ, SS, TT, UU, VV )

**G. False Accusation of "Sexualizing a Minor"**

47. On or around February 5, 2025 & February 7, 2025, YouTube removed Plaintiff's videos titled 'Akademiks Grooming Scandal SHOCKS The Internet!' & 'AKADEMIKS Exposed Party! Dank Demoss Denied Lyft & More!' and issued a Community Guidelines strike and a 7-day channel suspension, based on the demonstrably false, reckless, and defamatory accusation that Plaintiff's content was 'sexualizing a minor.' (Exhibit XX & YY).

48. Plaintiff's video was created to expose and report an alleged child predator active on YouTube's platform. Plaintiff's intent was protective and aimed at raising awareness, qualifying for EDSA (Educational, Documentary, Scientific & Artistic) exceptions. (Exhibit YY on EDSA).

49. Despite Plaintiff's appeals (Exhibit YY), YouTube representatives [Sarah and Priyanka] upheld this erroneous strike.

50. This false accusation caused Plaintiff extreme reputational harm and emotional distress."

51. Exhibits related to "Sexualizing a Minor" Accusation: MM, UU, XX, YY.

**H. "Fake Court Papers" Incident (Troi Torain)**

52. On or around January 14, 2025, YouTube informed Plaintiff that Troi Torain had submitted

'evidence of legal action' (DMCA, 17 U.S.C. § 512(g)(2)(C)) (Exhibit GG).

53. Plaintiff investigated Torain's submissions (EXHIBIT ZZ & AAA) and determined them

fraudulent. In a letter to Youtube's attorney (EXHIBIT BBB) explained the following: "A false

takedown notice was recently filed against my content. Despite my counter-notification,the

infringing party has submitted fraudulent court documents to YouTube in an attempt to

circumvent the DMCA process. It appears these fabricated documents were able to bypass

YouTube's automated review system, highlighting a critical vulnerability in their copyright

enforcement process. Specifically, the evidence shows that the documents submitted are

from the same case that was filed in November of 2023. The infringing party appears to have

fooled the system by filing an amendment in the November case, but this amendment does

not mention the video he had taken down in January. Furthermore, both the original complaint

and the amended complaint state that the alleged infringement began in November, which is

inconsistent with his claim that a video was taken down in January. The fraudulent filing also

uses the exact same docket number as the November case, which he had already used to

disable a previous video. Had YouTube's system or support team properly checked the docket

number, they would have easily identified that the same docket number was being used

fraudulently as if it were a second case. This docket number was used to keep this video down

http://www.youtube.com/watch?v=jCI6C2T8uN8 on 1-7-25 and this video

http://www.youtube.com/watch?v=uYwV9AHwFGU on 11-23-24 proving without a doubt that

he used the same case twice fraudulently. I have concrete evidence to support my assertions,

including the fraudulent court documents submitted to YouTube, the actual court filing from

November, the original complaint, and the amendment complaint (which doesn't specify what video), and transcripts of my communications with YouTube support demonstrating their failure to address this blatant abuse. These are all included as attachments to this email. Despite being alerted to the fraudulent nature of these documents, YouTube's support has failed to take appropriate action. This inaction is particularly concerning because YouTube has a legal obligation under the DMCA to implement measures to prevent this type of fraudulent activity. By failing to address this fraudulent takedown and restore my content, YouTube is not only exposing itself to direct liability for copyright infringement and substantial damages but also potentially undermining its safe harbor protections." This aligns with Torain's admissions of misusing the CCB. Troi Torain has also done this to other YouTube Channels as well. Point & Shoot, a channel with over 100,000 subscribers has also fallen victim to this Fake Court Paper scheme of Troi Torain. Point & Shoot has also written a statement for the court (Exhibit DDD).

54. Plaintiff notified YouTube Support of this fraud (Exhibit CCC). YouTube failed to reasonably verify or act.

55. Exhibits related to "Fake Court Papers": EXHIBITS ZZ, AAA, BBB, CCC

**I. YouTube's Public Statements vs. Actual Practices Regarding Copyright Abuse and Fair Use**

56. YouTube publicly states it is 'not a court of law' [YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 0:54], 'actively works to identify and prevent takedown requests targeting videos that utilize fair use' [YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 4:00], takes misuse 'seriously'

[YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 0:53], has 'zero tolerance for bad actors who use copyright as a tool to censor' [YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 2:17, 2:32], uses patterns to 'identify potentially fraudulent copyright claims' [YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 1:49], and will penalize persistent abusers [YouTube video https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, 3:05]. The DMCA, 17 U.S.C. § 512(f), establishes liability for misrepresentations (Exhibit GG). The YouTube video at Https://youtu.be/bF7c6PaaVQo?si=6jzxIoR6TNtyI7F2 also states only courts determine fair use and promotes the YouTube Audio Library for free music and sound effects.

57. Plaintiff alleges YouTube's handling of false DMCA takedowns, Fair Use, and its failure to act against abusers 'MONEYBOY TR3Y' and 'Troi Torain' (who admitted abusive tactics on YouTube) flagrantly contradict these stated policies and DMCA obligations.

58. Exhibits: Links/evidence of YouTube videos (https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7, Https://youtu.be/bF7c6PaaVQo?si=6jzxIoR6TNtyI7F2), EXHIBIT GG.

## J. YouTube's Failure to Address Serial Copyright Takedown Abuse & Platform Misuse by MONEYBOY TR3Y and Troi Torain (Ongoing)

59. Individuals 'MONEYBOY TR3Y' and 'Troi Torain' engaged in a persistent pattern of filing numerous DMCA takedowns and CCB claims against Plaintiff and others, alleged by Plaintiff to be predominantly false, abusive, or based on knowing material misrepresentations under 17 U.S.C. § 512(f). This is evidenced by their on-platform admissions.

60. Upon information and belief, neither has secured court orders validating these claims

against Plaintiff.

61. Plaintiff repeatedly informed YouTube of this systemic abuse.

62. Despite this knowledge, abusers' public admissions, and contradiction to its 'zero tolerance' policy [YouTube video, 2:32] and YouTube Terms Of Service (obligations to address 'repeat infringers,' which must extend to repeat abusers), YouTube failed to terminate or penalize these individuals. This inaction is inconsistent with DMCA § 512(i)(1)(A).

63. On June 1, 2024, Plaintiff reported to YouTube that a video by MONEYBOY TR3Y, previously taken down due to Plaintiff's valid DMCA notice, was reinstated by YouTube despite Plaintiff providing proof of ongoing legal action (Exhibit R) against MONEYBOY TR3Y before the June 11, 2024 deadline stated by YouTube (as required by YouTube's DMCA process detailed in EXHIBIT GG). The video remained live. (EXHIBIT V). On June 3, 2024, Plaintiff again notified YouTube about this improperly reinstated video. (EXHIBIT EE).

**K. Pattern of Retaliation and Channel Terminations (Ongoing)**

64. Plaintiff alleges numerous adverse actions by YouTube—including the March 25, 2024 'reused content' demonetization, the false 'sexualizing a minor' accusation, sustained DMCA claim difficulties, and channel suspensions, culminating in the termination of channel '#LNC News' on or around June 14, 2024 (due to multiple copyright strikes from 'Petty Goat 41' / 'Moneyboy Tr3y', Exhibit X)—occurred in suspicious temporal proximity to Plaintiff's assertion of rights, complaints, DMCA challenges, or this lawsuit, suggesting a pattern of retaliation by YouTube.

65. On June 17, 2024, Ms. Hayes faced another false DMCA claim from Mark Avington,

disabling a fifth channel associated with her.

66. Despite reinstating Plaintiff's channels 'Late Night Crew News' and 'Late Night Crew' on July 1 and July 2, 2024, respectively, the damage from these retaliatory and wrongful actions had already been inflicted and continued to accrue.

### L. Metadata of Plaintiff's Original Work

67. Plaintiff possesses metadata for original video content, such as the video 'Tyler Hero Feat. Christy,' which Plaintiff created on February 7, 2022, demonstrating Plaintiff's creation and ownership of said content, supporting claims of originality against false copyright claims. (Exhibit CC).

### M. Resulting Damages (Ongoing)

68. As a direct and proximate result of YouTube's actions and omissions detailed herein, Plaintiff has suffered substantial and ongoing damages including: (a) Loss of income from AdSense, Channel Memberships, Super Chats, and direct donations (CashApp/PayPal), during periods of wrongful demonetization, channel suspension, content suppression, and channel termination, estimated to be in excess of $150,000; (b) Loss of prospective business opportunities, including sponsorships; (c) Inability to fulfill certain contractual or business obligations; (d) Severe and lasting damage to Plaintiff's professional reputation and personal character, particularly from the false and defamatory accusation of 'sexualizing a minor'; (e) Significant emotional distress, anxiety, and mental anguish stemming from the constant harassment, false accusations, financial instability, threats of physical violence (including the terror caused by Jedidiah Brown's arrival in Oklahoma), and protracted battles with YouTube to assert Plaintiff's rights (including distress on his birthday); (f) Costs incurred

for travel and other related business expenses made in reliance on Plaintiff's YouTube income which could not be recouped due to YouTube's actions. Plaintiff will seek to quantify these damages fully through discovery.

## III. COUNT I: BREACH OF CONTRACT

69. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 68 of this

   First Amended Complaint as if fully set forth herein.

70. Plaintiff and YouTube entered into a binding contract, the terms of which are set

   forth in YouTube's Terms of Service (Exhibit AA) and the incorporated YouTube

   Community Guidelines (Exhibit UU). Plaintiff agreed to these terms as a condition

   of using YouTube's platform, and YouTube was likewise bound to uphold its

   obligations thereunder.

71. YouTube breached its contractual obligations to Plaintiff in numerous ways,

   including but not limited to the following:

   a. **Breach of DMCA/Copyright Procedures, Licensing Terms, and Policies Against Abuse:**

   i. YouTube's Terms of Service (e.g., "Copyright Protection,") and its public

commitments (e.g., YouTube Video

[https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7] and

[Https://youtu.be/bF7c6PaaVQo?si=6jzxIoR6TNtyI7F2]) establish that YouTube will

follow DMCA processes and manage copyright issues fairly. The DMCA (17 U.S.C.

§ 512, Exhibit GG) sets forth specific procedures for notice, takedown, and

counter-notification (§ 512(g)), and implies a duty for service providers to not

facilitate abuse (§ 512(f) liability for misrepresentations, § 512(i)(1)(A) policy

against repeat infringers). YouTube's Audio Library terms grant licenses for use. ii.

YouTube breached these duties by: (1) Failing to fairly and lawfully administer its

DMCA process consistent with 17 U.S.C. § 512(g) by improperly rejecting Plaintiff's

valid counter-notifications without legal basis and effectively adjudicating Fair

Use claims despite its public statements (2) Breaching its own Audio Library

license terms for "Built To Last" (3) Breaching its duty of fair dealing by accepting

fraudulent court documents from Troi Torain without reasonable verification

(4) Breaching its duty to provide clear, consistent, or legally valid reasons for

adverse actions (5) Breaching its "zero tolerance" policy for copyright abuse and

its policy against repeat infringers/abusers by not acting against MONEYBOY

TR3Y and Troi Torain despite their on-platform admissions of abuse

b. **Breach of Duty to Enforce Community Guidelines (Harassment, Child Safety, Platform Integrity):**

i. YouTube's Community Guidelines (ExhibitUU, e.g., sections on "Harassment &

cyberbullying policies,"; "Child safety policy,"and EDSA provisions "Spam,

deceptive practices & scams policies,"; "Overview" on equal enforcement,; policy

on "Encouraging Terms of Service violations,") contractually obligate YouTube to

make reasonable efforts to enforce these rules. ii. YouTube breached these duties

by: (1) Repeatedly failing to take meaningful or timely action against users who

engaged in severe harassment, doxxing, and credible threats of physical violence

against Plaintiff and his family, even when such users publicly admitted to and

executed their harassment campaigns on YouTube's platform  (2) Breaching its

"Child safety policy" and EDSA commitments by falsely accusing Plaintiff of

"sexualizing a minor" for EDSA-eligible content; (3) Breaching its policies against

deceptive practices and abuse of platform tools by allowing MONEYBOY TR3Y

and Troi Torain to serially misuse the copyright system

c. **Breach Regarding "Reused Content" / Monetization Policies:**

i. YouTube's Monetization Policies (incorporated by TOS) and its communications

(e.g., from "Emma," Exhibit KK) establish the terms for channel monetization. ii.

YouTube breached these by wrongfully demonetizing Plaintiff's channel for

"reused content" from March 25, 2024, without factual basis or specificity,

despite Plaintiff's content being original/transformative.

d. **Breach Regarding Wrongful Account Suspensions/Terminations:**

i. YouTube's TOS ("Account Suspension & Termination,") and Community

Guidelines (strike system,) dictate procedures for account actions. ii. YouTube

breached these by suspending/terminating Plaintiff's channel(s) (e.g., #LNC

News, EXHIBIT X) without Plaintiff committing any actual material breach, based

instead on YouTube's own errors, policy misapplications, or retaliation, often

without adequate notice

e. **Breach of Implied Covenant of Good Faith and Fair Dealing:**

i. Implicit in the contract between Plaintiff and YouTube is a covenant of good

faith and fair dealing, requiring YouTube to act fairly and not frustrate Plaintiff's

ability to enjoy the benefits of the contract. ii. YouTube's entire pattern of conduct

detailed in the Factual Allegations—including its inconsistent and unfair policy

enforcement, its failure to address platform abuse, its reliance on false or

fraudulent information, its misrepresentation of facts by its support staff, its

failure to adhere to its public pronouncements, and its actions that appear

retaliatory—violated this implied covenant. As a direct and proximate result of

YouTube's aforementioned breaches of contract, Plaintiff suffered substantial

damages including, but not limited to, lost income from all monetization streams

(AdSense, Memberships, Super Chats, donations), damage to Plaintiff's

professional reputation, significant emotional distress, and costs incurred to

address YouTube's wrongful actions, in an amount to be proven at trial.

72. Plaintiff avers that these breach of contract claims arise from YouTube's failure to

adhere to its own contractual promises and self-imposed obligations. Such

claims, based on YouTube's breach of its own contractual duties established in its

TOS and Community Guidelines, are not claims treating YouTube as a publisher or

speaker of third-party content and are therefore not barred by Section 230 of the

Communications Decency Act, 47 U.S.C. § 230.

## IV. COUNT II: NEGLIGENCE

74. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 73 of this

First Amended Complaint as if fully set forth herein.

75. **Duty of Care:** YouTube, as a sophisticated global platform that actively curates,

moderates, and monetizes user-generated content, and which sets detailed

terms, community standards, and public commitments regarding platform safety

and copyright management, owed Plaintiff, a creator reliant on its platform, a duty

to exercise reasonable care in: (a) designing, implementing, managing, and

providing support for its DMCA/copyright enforcement systems in a manner

consistent with the DMCA (Exhibit GG) and its own policies; (b) training its staff

adequately on said systems, applicable law (like the DMCA, particularly 17 U.S.C. §

512), and YouTube's own policies including those on Fair Use and copyright

abuse;

(c) enforcing its Community Guidelines in a consistent, non-arbitrary, and fair

manner to provide a reasonably safe environment for creators from harassment,

threats (including physical threats such as those made by Jedidiah Brown

involving travel to Plaintiff's home state, corroborated by Mary Avant from Dear

LNC.), and doxxing;

(d) accurately and fairly applying its monetization policies;

(e) investigating and responding to user reports of policy violations, fraud, safety

concerns, and system errors with due diligence, competence, and timeliness; and

(f) acting consistently with its public representations, such as its "zero tolerance"

policy for copyright abuse and its commitment to protecting Fair Use as stated in

its official videos (Exhibits [YouTube video

https://youtu.be/ddS_vmEbUwY?si=EAPDyEQCsacD3XU7] and

[Https://youtu.be/bF7c6PaaVQo?si=6jzxIoR6TNtyI7F2]), by implementing and

enforcing measures against known abusers of its systems and properly evaluating

content.

76. **Breach of Duty:** YouTube breached its multifaceted duty of care through

numerous negligent acts and omissions, including, but not limited to:

a. Negligently handling false DMCA claims by failing to adequately train staff

(evidenced in numerous chat logs including EXHIBIT M, N, C, J, K, BB, FF, MM),

relying on flawed automated systems (e.g., Content ID errors regarding the "Built

To Last" license), failing to reasonably verify submitted "legal evidence" like the

fraudulent documents in the Troi Torain matter despite being alerted by Plaintiff

to clear indicia of fraud, and failing to adhere to DMCA § 512(g) safeguards.

b. Negligently failing to protect Plaintiff from severe and ongoing harassment, doxxing, and credible threats of physical violence (including Jedidiah Brown's Oklahoma trip corroborated by Mary Avant) by not adequately investigating Plaintiff's reports (Exhibits EXHIBIT I, EXHIBIT K, EXHIBIT T, Exhibit O, EXHIBIT P, EXHIBIT S, EXHIBIT U, EXHIBIT Z) or taking timely and effective enforcement action against violating users, even when such users, like MONEYBOY TR3Y and Jedidiah Brown, openly admitted to and executed their harassment campaigns on YouTube's platform.

c. Negligently and recklessly misapplying its "Child safety policy" to falsely and damagingly accuse Plaintiff of "sexualizing a minor" without a reasonable, context-aware, or thorough investigation, particularly given the EDSA nature of Plaintiff's content aimed at exposing a predator.

d. Negligently applying its "reused content" policy to demonetize Plaintiff's

channel for an extended period (starting March 25, 2024) without proper

investigation, specific evidence of actual violations upon request, and based on

an apparently incorrect and arbitrary assessment of Plaintiff's original content.

e. Generally failing to provide competent or truthful support, providing misleading

or false information (e.g., EXHIBIT BB), and failing to adhere to its own stated

procedures for appeals, reviews, and creator support (evidenced throughout

numerous chat log Exhibits).

f. Negligently failing to implement or enforce its publicly stated "zero tolerance"

policy for copyright abuse [YouTube video, 2:32] and its commitments to protect

Fair Use [YouTube video, 4:00] by not acting against serial abusers "MONEYBOY

TR3Y" and "Troi Torain," despite their on-platform admissions of system abuse

and harassment, and by improperly rejecting Plaintiff's Fair Use assertions

without due consideration, contrary to DMCA principles and its own public

assurances.

g. Negligently failing to reinstate Plaintiff's channel after Mark Avington's failure to

bring a lawsuit within the DMCA's 10-day period, instead terminating Plaintiff's

channels without just cause

77. **Causation:** These negligent acts and omissions by YouTube directly and

proximately caused Plaintiff to suffer financial losses, severe reputational

damage, and significant emotional distress.

78. **Damages:** As a result of YouTube's negligence, Plaintiff suffered substantial

financial losses and other damages as detailed in Factual Allegation II.M.

79. **Inapplicability of Section 230 to Negligence Claims:** Plaintiff avers that these

negligence claims arise from YouTube's own conduct as a service provider in

failing to exercise reasonable care in the operation of its platform, its systems, the

training of its staff, and the enforcement of its policies, and/or in its role as a

developer or provider of information content through its direct communications,

decisions, and accusations against Plaintiff. Such claims are not based on treating

YouTube as a mere publisher or speaker of third-party content for which it might

claim immunity under Section 230 of the Communications Decency Act, 47 U.S.C.

§ 230, but rather are based on YouTube's own direct negligence.

## V. COUNT III: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND PROSPECTIVE ECONOMIC RELATIONSHIPS

80. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 79 of this

First Amended Complaint as if fully set forth herein.

81. **Existence of Valid Economic Relationships & YouTube's Knowledge:** Plaintiff

had established and ongoing income-generating economic relationships, and a

reasonable probability of future economic benefit, all of which were essential to

Plaintiff's livelihood. These included:

(a) Plaintiff's AdSense monetization agreement with Google/YouTube;

(b) recurring revenue from Channel Memberships and Super Chats facilitated

directly by YouTube's platform;

(c) actual and reasonably expected potential sponsorship agreements contingent

on Plaintiff's active and reputable YouTube channel presence; and

(d) direct donations from Plaintiff's audience (e.g., via CashApp, PayPal) solicited and received as a direct result of Plaintiff's YouTube content and engagement.

YouTube was fully aware of these economic relationships, as it provides the

platform, tools (AdSense, Memberships, Super Chats), and policies (e.g.,EXHIBIT

AA "Right to Monetize,") that govern and facilitate these income streams.

82. **YouTube's Intentional and Wrongful Acts of Interference:** YouTube

intentionally and wrongfully interfered with Plaintiff's existing and prospective

economic relationships through its pattern of misconduct and wrongful acts,

which were not justified by any legitimate business purpose and were often

undertaken in bad faith or with reckless disregard for the harm to Plaintiff. These

acts included but were not limited to:

a. The arbitrary and unsubstantiated three-month demonetization of Plaintiff's

channel for alleged "reused content" commencing March 25, 2024

b. The series of wrongful channel suspensions and video takedowns based on

YouTube's mismanaged DMCA claims (including for the YouTube-licensed "Built To Last" music) and the defamatory "sexualizing a minor" accusation and associated strike

c. Its deliberate indifference or grossly negligent failure to act upon or properly investigate the submission of fraudulent court documents by Troi Torain, which resulted in the prolonged and wrongful suppression of Plaintiff's content and revenue generation, enabling the circumvention of DMCA § 512(g)(2)(C).

d. Its persistent failure to curb severe harassment, doxxing, and physical threats (including Jedidiah Brown's actions in Oklahoma corroborated by Mary Avant) by MB and JB, despite numerous notifications and their on-platform admissions, creating a hostile environment damaging Plaintiff's business.

e. Its deliberate indifference to serial copyright takedown abuse by MB and TT, despite their on-platform admissions. YouTube's knowledge and inaction, despite its "zero tolerance" statements [YouTube video, 2:32] and DMCA obligations (e.g.,

§ 512(f), § 512(i)), wrongfully facilitated interference.

f. Its failure to protect Plaintiff's Fair Use content, despite public commitments

[YouTube video, 4:00] and DMCA principles, leading to wrongful takedowns that

interfered with Plaintiff's economic activities.

83. These acts were intentional in that they were undertaken with knowledge that

interference with Plaintiff's economic relationships was substantially certain to

occur as a result, or were undertaken for improper or retaliatory purposes, or

demonstrated a reckless disregard for Plaintiff's rights and the clear evidence

Plaintiff repeatedly provided.

84. **Actual Disruption of the Relationships:** As a direct and proximate result of

YouTube's aforementioned wrongful actions, Plaintiff's ability to earn income from

AdSense, Channel Memberships, Super Chats, direct donations, and

sponsorships was severely disrupted, diminished, or entirely cut off during

periods of channel suspension, demonetization, or when Plaintiff's content was

wrongfully removed or suppressed. Furthermore, Plaintiff's reputation, a key asset

in attracting and maintaining these economic relationships, was substantially

Damaged.

85. **Resulting Damages:** As a result of YouTube's tortious interference, Plaintiff

suffered substantial and quantifiable financial losses, estimated to be an amount

to be determined at trial, due to this interference.

86. **Inapplicability of Section 230 of the CDA to Tortious Interference Claims:**

Plaintiff avers that YouTube's intentional and wrongful acts, which directly

interfered with Plaintiff's economic relationships, constitute YouTube's own

tortious conduct. These actions go beyond the mere publishing of third-party

information and involve YouTube's active mismanagement of its platform, its

direct application of policies in a harmful way, and its failures to adhere to legal

and contractual duties (including the duty not to facilitate known abuse of its

systems by third parties like MONEYBOY TR3Y and Troi Torain). Therefore, such

conduct is not shielded by Section 230 of the Communications Decency Act, 47

U.S.C. § 230, as YouTube was acting as an active agent whose own decisions and

operational failures directly caused or materially contributed to the interference

and harm.

**VI. ARGUMENT REGARDING YOUTUBE USING VAGUE POLICIES OR FACILITATING
COPYRIGHT ABUSE TO CIRCUMVENT PROPER COPYRIGHT/FAIR USE ADJUDICATION,
DMCA PROTECTIONS, AND SECTION 230**

87. Plaintiff alleges that YouTube's application of broad and subjective policies, such

as its "reused content" policy, to demonetize or penalize Plaintiff's channel,

particularly when Plaintiff's content involved original commentary, editing,

transformative uses, or YouTube-provided licenses (like "Built To Last"), served as

a pretext. Given YouTube's own admission that it is "not a court of law" and

cannot definitively adjudicate complex legal issues like fair use [YouTube video,

0:54], using such vague internal policies to effectively punish creators for

perceived copyright-adjacent issues, without affording the due process or

specific analysis required under the DMCA and copyright law, constitutes a

wrongful act and an act of bad faith. This appears to be an attempt by YouTube to

exert control and penalize content it disfavors without engaging in the nuanced

legal analysis that would occur in a court of law.

88. Furthermore, by failing to act on known abuse of the DMCA system by serial false

claimers like MONEYBOY TR3Y and Troi Torain, who openly boasted about their

misuse of the system and intent to harass on YouTube's own platform, YouTube

further undermines the DMCA's intended balance (see 17 U.S.C. § 512 (f)

regarding misrepresentations and § 512(i) regarding policies against repeat

infringers) and its own responsibilities as a service provider seeking statutory safe

harbor protections under 17 U.S.C. § 512.

89. Such actions and inactions, where YouTube itself is actively making erroneous

content decisions, misapplying its policies, or knowingly failing to curb known

abuse of its systems which it facilitates, are not merely the passive hosting of

third-party content but constitute YouTube's own conduct, potentially making it

an "information content provider" in whole or in part with respect to the harm

caused by these decisions or failures, and thus falling outside the intended

immunity of Section 230 of the Communications Decency Act, 47 U.S.C. § 230.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff DaShay Hall Sr. prays for judgment against Defendant YouTube, LLC as

follows:

90. For compensatory damages in an amount to be proven at trial, but believed to be in

excess of $150,000.

91. For statutory damages as may be applicable under 17 U.S.C. § 512(f) for injuries incurred as

a result of YouTube's reliance upon or facilitation of knowing material misrepresentations in

DMCA notices by third parties.

92. For injunctive relief requiring Defendant YouTube, LLC to:

a. Immediately reinstate Plaintiff's YouTube channels, including but not limited to "Late Night

Crew," "Late Night Crew News," "LNC Sports," and "#LNC Wrestling," to full operational status,

with all features, monetization capabilities, and good standing restored.

b. Remove all false copyright strikes, community guideline strikes, and any other wrongful

penalties or restrictions from Plaintiff's channels related to the matters alleged herein.

c. Expunge any false accusations, such as the accusation of "sexualizing a minor," from

Plaintiff's records and account history with YouTube.

93. For an order enjoining Defendant YouTube, LLC, its agents, employees, and assigns from:

a. Asserting or facilitating false, abusive, or fraudulent DMCA claims against Plaintiff.

b. Wrongfully demonetizing, suspending, or terminating Plaintiff's channels or content without

just cause, due process as outlined in its Terms of Service, Community Guidelines, and

applicable law including the DMCA.

c. Failing to enforce its Community Guidelines in a fair and consistent manner against

harassment, threats (including those of physical violence and specific threats made against

Plaintiff in Oklahoma), and doxxing directed at Plaintiff, particularly when perpetrated by users

who have openly admitted to such conduct on YouTube's platform or have been identified as

serial abusers.

d. Failing to implement and enforce fair, lawful, and transparent processes for copyright

management (including proper handling of licenses like the YouTube Audio Library, and

addressing serial abuse of the DMCA system by known bad actors), content moderation, and

policy enforcement consistent with the DMCA and its own public commitments and

contractual obligations.

94. For costs of suit incurred herein by Plaintiff.

95. For such other and further relief as the Court may deem just and proper.

Dated: 5/26/2025

By: __/s/ DaShay Hall Sr. _____

DaShay Hall Sr.

629 Westridge Court

Yukon, OK 73099

Tel: (317) 697-0781