1    DAVID H. KRAMER, State Bar No. 168452
     Email:  dkramer@wsgr.com
2    KELLY M. KNOLL, State Bar No. 305579
     Email:  kknoll@wsgr.com
3    WILSON SONSINI GOODRICH & ROSATI
     Professional Corporation
4    650 Page Mill Road
     Palo Alto, CA 94304-1050
5    Telephone: (650) 493-9300

6    *Counsel for Defendant*
     YOUTUBE, LLC
7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12   DASHAY HALL SR.,                  )   CASE NO.:  3:24-cv-04071-WHO
                                       )
13          Plaintiff,                 )   **DEFENDANT'S REPLY IN**
                                       )   **SUPPORT OF MOTION TO**
14       v.                            )   **DISMISS PLAINTIFF'S FIRST**
                                       )   **AMENDED COMPLAINT**
15   YOUTUBE, LLC,                     )
                                       )   Before:        Hon.William H. Orrick
16          Defendant.                 )   Courtroom:     2
                                       )   Hearing Date:  September 3, 2025
17                                     )   Time:          2:00 p.m.
                                       )
18   _____ )

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

<u>**Page**</u>

3    I.    PLAINTIFF STATES NO VIABLE CAUSE OF ACTION ............................................1

4         A.    Hall Cannot Save His Contract Claim......................................................................1

5         B.    Hall Cannot Save His Tort Claims...........................................................................4

6              1.    Section 230 Bars Hall's Claims .................................................................4

7              2.    The First Amendment Bars Hall's Claims .................................................6

8              3.    Hall Fails to Plead the Essential Elements of His Negligence or
                    Tortious Interference Claims.....................................................................8

9

10    II.   HALL'S DAMAGES CLAIM IS BARRED BY YOUTUBE'S LIMITATION OF
             LIABILITY PROVISION.........................................................................................9

11    CONCLUSION .........................................................................................................10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Andersen v. Stability AI Ltd.*,
   2024 U.S. Dist. LEXIS 143204 (N.D. Cal. Aug. 12, 2024) ........................................................ 4

5

6

*Beatty v. PHH Mortg. Corp.*,
   2019 U.S. Dist. LEXIS 213794 (N.D. Cal. Dec. 10, 2019) ....................................................... 8

7

*Bogard v. TikTok Inc.*,
   2025 U.S. Dist. LEXIS 32959 (N.D. Cal. Feb. 24, 2025)......................................................... 8

8

9

*Darnaa, LLC v. Google LLC*,
   756 F. App'x 674 (9th Cir. 2018)........................................................................................... 10

10

11

*Ebeid v. Facebook, Inc.*,
   2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019) ........................................................ 4

12

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008)................................................................................................. 5

13

14

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
   2011 U.S. Dist. LEXIS 131140 (N.D. Cal. Nov. 14, 2011)..................................................... 8

15

16

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020)............................................................................................................ 9

17

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021) .................................................................................. 10

18

19

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015)................................................................................................ 10

20

21

*Mahoney v. Meta Platforms, Inc.*,
   710 F. Supp. 3d 771 (N.D. Cal. 2024) ................................................................................... 7

22

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th 12 (2021)........................................................................................... 3, 5, 6

23

24

*Prager Univ. v. Google LLC*,
   85 Cal. App. 5th 1022 (2022)............................................................................................. 2, 3

25

26

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ................................................................................................................ 7

27

28

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
    151 F.3d 1132 (9th Cir. 1998)...................................................................................................4

*Worldwide Media, Inc. v. Twitter, Inc.*,
    2018 U.S. Dist. LEXIS 182700 (N.D. Cal. Oct. 24, 2018) .......................................................4

**Statutes**

17 U.S.C. § 512 (DMCA) ...............................................................................................................3, 6

1    In his Opposition brief, Hall explains that he filed the Amended Complaint ("FAC") in

2  order to provide "greater [s]pecificity." Opp. at 2. But this Court did not reject Hall's claims the

3  first time around because they lacked "specific dates" or "extensive[] details." *Id.* It rejected them

4  because they were insufficient as a matter of law. They still are.

5    Hall's Opposition repeats many of the allegations of his Amended Complaint, but fails to

6  explain how they state a viable cause of action. Hall does not grapple with, much less try to

7  distinguish, the many authorities cited by YouTube that foreclose Hall's claims. Indeed, the

8  Opposition is perhaps most notable for what it does ***not*** contain—a citation to a single legal

9  opinion.

10    In lieu of law, Hall tries to rely on sensationalism. In the Opposition's retelling, by

11  identifying certain videos as violating its policies and informing Hall of the same, YouTube

12  publicly accused him of "sexualizing a minor." Opp. at 9. It did no such thing.  YouTube removing

13  (and not restoring) one of Hall's videos based on a third party's facially valid charge of copyright

14  infringement is not, as Hall now claims, a "'fake court papers' incident." *Id*. at 2.  Hall's hyperbolic

15  mischaracterizations  do  not  transform  YouTube's  mundane  content-moderation  actions  into

16  something nefarious—and certainly do not establish a viable legal claim.

17    Hall's claims should be dismissed, this time with prejudice.

18  I.    **PLAINTIFF STATES NO VIABLE CAUSE OF ACTION**

19    A.    **Hall Cannot Save His Contract Claim**

20    As YouTube has explained (Mot. at 7), Hall's breach of contract claim fails for a simple

21  reason: Hall still fails to identify any contractual provision that YouTube supposedly breached. As

22  the Court previously ruled, "a complaint must provide sufficient detail to give fair notice of the

23  contractual obligation allegedly violated." ECF No. 28 ("Order") at 6. The Court gave Plaintiff

24  leave to amend to identify a contractual provision that supported his breach claim. *Id.* ("If he

25  chooses to amend his claims, he must identify the specific provisions of YouTube's TOS or

26  Community Guidelines that he believes YouTube violated . . . ."). He failed to do so. Indeed,

27

28

1    having again predicated his contract claim on YouTube's Terms of Service, *see* FAC ¶ 70, Hall

2    all but ignores that agreement in the Opposition, *see* Opp. at 3-5. That should end the matter.

3        Plaintiff tries to elude this fundamental defect with a series of side shows, but they are not

4    a meaningful, much less meritorious, response to the Court's ruling.

5        ***First***, Hall claims that YouTube made various "commitments" in videos posted to the

6    service. Opp. at 3-5. In particular, he points to a statement that: "We have zero tolerance for bad

7    actors, who use copyright as a tool to censor or troll members of the YouTube community." Opp.

8    at 3. But this statement is not part of the Terms of Service (ECF No. 37-2 ("Knoll Decl. ISO

9    MTD"), Ex. 1), nor is it promissory in nature. A statement that YouTube has "zero tolerance for

10    bad actors" is not a guarantee that YouTube will take action against, or protect Hall's videos and

11    channels from, persons Hall considers to be "bad actors." The integration clause in YouTube's

12    Terms only reinforces the common-sense conclusion that this is not a binding promise between

13    the parties. *See Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1039-1040 (2022) (Google

14    and YouTube's "generalized public statements regarding their monitoring and filtering practices

15    [in 'public-facing comments'] do not give rise to a state law contractual obligation to regulate their

16    publishing decisions" given the parties' "integrated contracts").

17        The same is true of YouTube's alleged statements concerning its "Audio Library." Opp. at

18    4. In the Opposition, Hall repeats his claims that YouTube breached "its own Audio Library license

19    terms for [the song] 'Built to Last'" (*id.*), but he still does not say ***what those terms are***. *See* Mot.

20    at 10 n. 5. Instead, Hall cites yet more statements from YouTube videos—that music in Audio

21    Library is "free to use," "copyright-safe," and "won't result in a Content ID claim or affect

22    monetization." Opp. at 4. But those statements are not part of the parties' agreement. Regardless,

23    Hall has not alleged that YouTube took any actions inconsistent with them. Hall does not claim,

24    for example, that his use of the song "Built to Last" resulted in demonetization of his account or

25    channels. Nor does he plead any facts that suggest the videos at issue were claimed through

26    YouTube's Content ID system. Rather, according to the Complaint (and its many exhibits), those

27

28

1    videos were removed in response to takedown notices.[1] *See, e.g.*, FAC ¶¶ 23-30; Exs. (ECF No.

2    29-2) at 58-60. Unsurprisingly, nothing in YouTube's video about Audio Library (and certainly

3    nothing in the Terms of Service) states that YouTube will not honor allegations of copyright

4    infringement that come in the form of facially valid takedown notices under the DMCA.[2]

5          ***Next***, Hall points to various YouTube policies. Hall claims that YouTube "breached" its

6    policies by removing or demonetizing certain of his videos and by informing Hall of the reasons

7    it did so (which Hall mischaracterizes as "accusation[s]"). *See* Opp. at 4. But as YouTube

8    explained, the Terms establish YouTube's discretion to enforce its Community Guidelines—they

9    do not impose an obligation to do so whenever and however users demand. *See* Mot. at 9; Knoll

10   Decl. ISO MTD, Ex. 1 at 4, 10 (ECF No. 37-2) (stating "YouTube is under no obligation to host

11   or serve Content," and "we reserve the right to remove or take down some or all of such Content

12   in our discretion"). As case after case has made clear, these provisions in YouTube's governing

13   agreements—and others like them—defeat any claim for breach of contract based on YouTube's

14   content moderation decisions. Mot. at 9; *see Prager Univ.*, 85 Cal. App. 5th at 1038 (explaining

15   YouTube's guidelines "warn[ed] that defendants may remove YouTube videos that run afoul of

16   its standards" but "in no way purport to bind defendants to publish any given video, or to remove

17   a video only for violation of those guidelines"); *accord Murphy v. Twitter, Inc.*, 60 Cal. App. 5th

18   12, 12 (2021) (affirming dismissal of contract claim based on similar language in Twitter's terms

19   of service).

20

21

22   [1] Hall's invocation of the license for "Built to Last" is perplexing. Hall does not claim that
     YouTube improperly processed a takedown notice alleging he infringed "Built to Last." FAC
23   ¶¶ 23-25. Rather, Hall alleges that certain of his videos that featured music in the background—
     including, but not limited to, the song "Built to Last"—were removed in response to takedown
24   notices from MoneyBoyTr3y alleging infringement of a song called "Feel Me." *Id.* To the extent
     Hall is suggesting that use of a song from the Audio Library renders his videos generally immune
25   from third party copyright claims, regardless of what else his videos might contain, that is deeply
     misguided.
26

27   [2] The Opposition also takes issue with YouTube's supposed failure "to provide ***valid*** reasons for
     adverse actions" and YouTube's "accept[ance] [of] fraudulent court documents." Opp. at 4
28   (emphasis added). But Hall does not attempt to tie those complaints to any contractual provision.

1   The problems that bar Hall's contract claim are also the undoing of his implied covenant

2   claim. Hall does not explain why the claim is not duplicative of his breach of contract claim.

3   Indeed, the Opposition confirms that it is (*see* Opp. at 5 (referring to allegations concerning, for

4   example, supposedly "unfair policy enforcement")), and it can be dismissed on that basis alone.

5   *See* Mot. at 12; *see also, e.g.*, *Worldwide Media, Inc. v. Twitter, Inc.*, 2018 U.S. Dist. LEXIS

6   182700, at \*21-22 (N.D. Cal. Oct. 24, 2018) (dismissing the plaintiffs' implied covenant claim

7   without leave to amend where that claim was "duplicative of their claim for breach of express

8   terms").

9   The implied covenant claim also suffers from the same lack of contractual foundation as

10   Hall's express breach claim. "[T]o state a claim for breach of the implied covenant of good faith

11   and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated."

12   *Andersen v. Stability AI Ltd.*, 2024 U.S. Dist. LEXIS 143204, at \*54-55 (N.D. Cal. Aug. 12, 2024)

13   (citation omitted). Hall fails to do so. Moreover, because YouTube's decisions regarding content

14   removal and demonetization were expressly authorized by the Terms of Service and monetization

15   agreements (*see* Mot. at 12), there can be no implied covenant claim as a matter of law. *See, e.g.*,

16   *Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876, at \*20-22 (N.D. Cal. May 9, 2019) ("[A]

17   party cannot be held liable on a bad faith claim for doing what is expressly permitted in the

18   agreement." (quoting *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir.

19   1998))). Hall's Opposition offers no basis for evading that settled legal principle.

20   Finally, Hall's bald assertion that YouTube took actions in "bad faith" (Opp. at 5) finds no

21   support in the facts he alleges, which at best establish only the routine enforcement of YouTube's

22   policies and processing of takedown notices. Without far more, the mere incantation of the words

23   "bad faith" cannot save Hall's claim from dismissal.

24   **B.     Hall Cannot Save His Tort Claims**

25   1.     <u>Section 230 Bars Hall's Claims</u>

26   Hall does not discuss, much less distinguish, the ample body of cases holding that Section

27   230(c)(1) protects content-moderation decisions just like those at issue here, whether about

28

1    monetization, removal of videos, or any of the other actions that YouTube supposedly took in

2    deciding how to display content on its platform. Mot. at 17-18.

3            In the Opposition, Hall argues that YouTube engaged in "direct conduct" that falls "outside

4    Section 230's scope." Opp. at 7. While it is unclear what exactly Hall means by "direct conduct,"

5    it is apparent that Hall misunderstands Section 230's protections. The proper question is whether

6    Hall's claims are based on YouTube acting "as the publisher or speaker of information created by

7    another," in which case its actions fall under "the broad immunity of section 230" and cannot be

8    defeated "through the 'creative pleading' of barred claims." *Murphy*, 60 Cal. App. 5th at 26-28

9    (citation omitted). A review of the "direct conduct" cited in the Opposition reveals that, once again,

10   what Hall complains of is precisely what Section 230 protects—YouTube's exercise of its rights

11   as a publisher of content created by another.

12           Hall first points to YouTube's decision to remove one of his videos for violating its child

13   safety policy. Opp. at 7. Hall acknowledges that this is a "content moderation decision," but

14   complains that "YouTube cannot blame a third party for its content moderation decision." Opp. at

15   7. This misunderstands YouTube's argument—and the law. *See* Mot. 17-18. YouTube does not

16   claim that it is entitled to Section 230's protections because a third party moderated content on its

17   platform, but rather that YouTube's content moderation constitutes "activity that can be boiled

18   down to deciding whether to exclude ***material that third parties seek to post online***," *Fair Hous.*

19   *Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008)

20   (emphasis added). *See* Mot. at 18. In this circumstance, Hall himself is the "third party" who posted

21   content to YouTube's platform, and YouTube's content moderation decisions regarding his (or

22   any other third party's) content are squarely protected by Section 230.[3]

23

24   _____

25   [3] Hall alleges that, in connection with these content-moderation decisions, YouTube sent Hall a
     notice informing him that his video violated YouTube's child safety policy and sharing
26   information about that policy. FAC ¶ 47; FAC Exs. (ECF No. 29-3) at 171. It makes no difference
     that that email is not itself third-party content. Hall is not suing YouTube because of that email,
27   and there would be no basis to do so. Hall is suing over YouTube's decisions concerning the
     removal of third party content from its platform, conduct that is at the core of Section 230's
28   protections.

1    Hall next suggests that YouTube forfeits Section 230's protection by removing content that

2 (Hall believes) did not violate its policies. *See* Opp. at 7-8 (suggesting YouTube engaged in

3 "direct" conduct by wrongly removing videos such as "Akademiks Grooming Scandal SHOCKS

4 The Internet!" because they constitute "Educational, Documentary, Scientific & Artistic" content);

5 FAC ¶¶ 47-49. That argument, however, has been roundly rejected. *See e.g.*, *Murphy*, 60 Cal. App.

6 5th at 31-32 (rejecting the argument that Section 230 immunity did not extend to Twitter's actions

7 in removing third party content from its platform where plaintiff alleged that Twitter failed to

8 adhere to its own policies and terms when making content moderation decisions).

9    Finally, Hall suggests that YouTube's actions somehow fall outside the scope of Section

10 230's protection because YouTube "ignore[d] their own stated policies and legal responsibilities."

11 Opp. at 8. In particular, the Opposition faults YouTube for failing to take action against YouTube

12 users who, Hall claims, submitted fraudulent takedown notices or engaged in threatening or

13 harassing behavior. *See* Opp. at 8-9.[4] But this is merely a different way of saying the same thing—

14 that YouTube should be liable for its decisions **not to** remove users or content from its platform.

15 As this Court explained, however, "[c]ourts have consistently held that online platforms are not

16 liable for their decisions to publish, remove, or **allow** third party content." Order at 11 (emphasis

17 added). This too is no basis for evading Section 230.

18            2.    The First Amendment Bars Hall's Claims

19    In its opening brief, YouTube explained that, because Hall seeks to hold YouTube liable

20 for its editorial decisions and seeks an order compelling YouTube to make editorial choices

21 different from those it has made, Hall's tort claims are barred by the First Amendment. Mot. at 18-

22 19. In his Opposition, Hall does not dispute that YouTube's decisions to publish and remove

23 content on its platform are protected by the First Amendment.

24

25 ───────────────

26 [4] Contrary to Hall's suggestion (Opp. at 8), Section 512(f) does not impose any "legal obligation"
on YouTube or anyone else. That provision of the DMCA imposes liability for damages on

27 individuals who knowingly make false infringement claims. *See* 17 U.S.C. § 512(f). It does not
mandate that service providers **seek** damages or otherwise act (*id.*) and in any event has nothing to

28 do with Section 230.

1      Instead, Hall argues only that "YouTube does not have a First Amendment right to defame

2   Plaintiff by implying he is a pedophile through a false 'sexualizing a minor' claim." Opp. at 9. But

3   of course, YouTube has done no such thing. It simply sent a standard email notification to Hall (as

4   it would to any other user) informing Hall that a particular video on his channel violated

5   YouTube's child safety policy and providing information to Hall about that policy. *See, e.g.*, FAC

6   Exs. (ECF No. 29-3) at 171. Hall does not claim that YouTube sent the notice to anyone but Hall

7   himself, or that YouTube otherwise disclosed to anyone but Hall the grounds for his videos'

8   removal (i.e., for violations of its child safety policy). To the extent others know of YouTube's

9   enforcement of its child safety policy in connection with Hall's videos, it is presumably because

10  *Hall* told them.[5]

11     Tellingly, Mr. Hall did not bring a claim for defamation, nor could he. There is nothing

12  remotely defamatory about YouTube's customer-support notification stating YouTube's policy

13  that "[content] that sexualizes minors in any way is not allowed on YouTube."[6] And Mr. Hall's

14  interpretation of that email, however unreasonable, does not obviate the First Amendment

15  problems presented by his claims and requested relief.

16     Hall also argues that "the First Amendment primarily applies against government entities,"

17  and "YouTube does not have free speech rights against non-government entities that protect

18  slanderous allegations." Opp. at 9. This misunderstands YouTube's argument. YouTube does not

19  claim that Plaintiff is a state actor. YouTube's argument is that Plaintiff cannot use ***the power of***

20  ***the courts*** to control YouTube's speech. *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011) ("The

21

22  ───────────────

23  [5] *See* Real Late Night Crew, *PROOF Why DJ Akademiks Channel Is Getting TERMINATED!*, https://www.youtube.com/watch?v=1vFqZls3JXU (Feb. 12, 2025) at 51:00-51:35 ("Two of my Akademiks videos was removed and one of them was age restricted because the videos in question said I was sexualizing a minor . . . We are currently filing an amendment to our federal lawsuit against YouTube and DJ Akademiks will be included in it because YouTube owes me for calling me a pedophile.").

24

25

26  [6] *See Mahoney v. Meta Platforms, Inc.*, 710 F. Supp. 3d 771 (N.D. Cal. 2024) (explaining that, under California law, the defamatory statement must be made to "some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made") (internal citation omitted).

27

28

1    Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits."). That

2    would be an affront to YouTube's First Amendment rights.

3                3.    Hall Fails to Plead the Essential Elements of His Negligence or Tortious

4                      Interference Claims

5        ***Negligence.*** In his Opposition, Hall reiterates his belief that YouTube owes him, as "a

6    creator reliant on [YouTube's] platform, a duty of reasonable care in its operations, including

7    designing systems, training staff, enforcing guidelines, and investigating reports." Opp. at 6. But

8    repeating this claim does not make it so. "Plaintiffs can plead a duty only where there is (a) a duty

9    imposed by law; (b) a duty assumed by the defendant, or (c) a duty arising out of a preexisting

10   relationship." *Green Desert Oil Grp. v. BP W. Coast Prods.*, 2011 U.S. Dist. LEXIS 131140, at

11   *16 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th Cir 2014). Whatever his meaning,

12   Hall's vague assertion that a duty "arises from YouTube's active role" (Opp. at 6) is none of the

13   above. And while Hall acknowledges YouTube's argument that "no 'special relationship' exists"

14   (Opp. at 6), he does not even attempt to show otherwise.[7]

15        As YouTube explained (Mot. at 14), Hall's negligence claim also runs headlong into the

16   economic loss rule because he alleges only economic injury. In his Opposition, Hall points to

17   allegations that he has suffered "[s]evere and lasting damage to [his] professional reputation and

18   personal character" and "[s]ignificant emotional distress, anxiety, and mental anguish." Opp. at 6.

19   But Hall's claims of reputational harm and emotional distress find no support in his own factual

20   allegations.

21        Hall has failed to allege the sort of malicious or outrageous conduct that could support

22   recovery of emotional distress damages. *See Beatty v. PHH Mortg. Corp.*, 2019 U.S. Dist. LEXIS

23   213794, at *34 (N.D. Cal. Dec. 10, 2019) ("Recovery for emotional distress in negligence cases is

24   generally not available unless malice, breach of a fiduciary duty, physical injury or impact, or some

25

26   [7] Recent case law further confirms that it does not. *See e.g.*, *Bogard v. TikTok Inc.*, 2025 U.S. Dist.
     LEXIS 32959, at *25, 26 (N.D. Cal. Feb. 24, 2025) (explaining that offering a means by which

27   users could report videos that they felt violated platform guidelines or policies did not create an
     obligation that the platform act on those reports and did not create a "special relationship" between

28   users and the platform).

DEFENDANT'S REPLY ISO MOTION TO DISMISS          -8-          CASE NO.:  3:24-CV-04071-WHO
FIRST AMENDED COMPLAINT

1    other unusually extreme or outrageous circumstance, can be shown."). And Hall offers no

2    meaningful allegation that his reputation was harmed as the result of YouTube's actions. *See* FAC

3    ¶¶ 47-51, 68; Opp. at 10. All Hall points to is YouTube's removal of content found to violate its

4    child safety policy and an email to Hall informing him of the same. Nothing about YouTube's

5    actions is extreme, defamatory, or outrageous.

6        ***Tortious Interference.*** As both YouTube and this Court have explained, a party pleading

7    a claim for interference with contractual relationships or prospective economic advantage must

8    identify specific relationships with specific third parties. *See* Mot. at 15-17; Order at 10-11. Hall

9    has not done so, and the Opposition confirms that. All Hall can point to are the Amended

10   Complaint's vague allegations about "Channel Memberships," "Super Chats," and "Direct

11   donations from audience." Opp. at 6 (citing FAC ¶ 81). Contrary to Hall's claim, those allegations

12   are far from a "list[]" of "specific third-party relationships" (*id.*), and they are far from sufficient.

13   On that basis alone, his tortious interference claims fail.

14       Hall also fails to point to any allegations of wrongful conduct by YouTube, a requirement

15   for a claim for interference with prospective economic advantage. *See* Mot. at 17. In the

16   Opposition, Hall asserts that YouTube committed "'intentional and wrongful acts' of interference"

17   in the form of "wrongful demonetization, suspensions based on the defamatory 'sexualizing a

18   minor' accusation, and deliberate indifference to fraudulent documents/harassment." Opp. at 6-7.

19   To be wrongful, however, an act must be "unlawful, that is . . . proscribed by some constitutional,

20   statutory, regulatory, common law, or other determinable legal standard." *Ixchel Pharma, LLC v.*

21   *Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020). All Hall has shown is that YouTube enforced its

22   policies and processed certain copyright takedown notices in a manner with which Hall

23   disagrees—not that those actions were "unlawful."

24   **II.    HALL'S DAMAGES CLAIM IS BARRED BY YOUTUBE'S LIMITATION OF**

25   **LIABILITY PROVISION**

26       As YouTube explained, the Terms explicitly provide that YouTube will not be liable for

27   any "indirect or consequential loss [or] punitive damages" on "any claim" based on harm from

28

DEFENDANT'S REPLY ISO MOTION TO DISMISS          -9-          CASE NO.: 3:24-CV-04071-WHO
FIRST AMENDED COMPLAINT

1    "any content whether submitted by a user or YouTube," "the removal or unavailability of any

2    content," "personal injury . . . resulting from [] use of the service," and/or "errors, mistakes, or

3    inaccuracies on the service." Knoll Decl. ISO MTD, Ex. 1 at 12-13. In the Opposition, Hall does

4    not contest that his claims fall within the scope of YouTube's limitation of liability provision or

5    that any indirect or consequential damages he seeks are barred.

6              Instead, Hall makes two arguments in response—neither viable. First, Hall claims that the

7    damages he seeks for supposed reputational harm and emotional distress are "direct, non-economic

8    harms and emotional distress damages" and so are not barred. Opp. at 10. But Hall does not

9    plausibly plead that he suffered any reputational harm or emotional distress as a result of

10   YouTube's actions, and indeed such injuries are generally not compensable for a breach of

11   contract.[8] Next, Hall attempts to dismiss the Terms of Service as "irrelevant when it comes to law,

12   especially if its terms are against what the law states." *Id*. at 10. That the Terms are not "irrelevant"

13   is plain; Mr. Hall himself bases his claims on the agreement (*see* FAC ¶ 70). And as to Mr. Hall's

14   suggestion that they are "against what the law states" (Opp. at 10), that is plainly refuted by the

15   numerous courts that have found YouTube's Terms (and the Limitation of Liability provision

16   within them) enforceable. *See, e.g.*, *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125-28 (2015),

17   *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir.

18   2018).

19                                           **CONCLUSION**

20             For the foregoing reasons, Hall's Amended Complaint should be dismissed. This Court's

21   Order granting YouTube's original motion to dismiss provided a detailed recounting of the

22   deficiencies of his original claims. Hall's Amended Complaint, nonetheless, falters for precisely

23   the same reasons. Accordingly, YouTube respectfully asks that Hall's Amended Complaint be

24   dismissed without further leave to amend.

25

26   _____

27   [8] *See King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 790 (N.D. Cal. 2021) (explaining "emotional
     distress or injury to reputation . . . is generally not compensable for a breach of contract," and
28   citing numerous authorities in support).

DEFENDANT'S REPLY ISO MOTION TO DISMISS                -10-              CASE NO.: 3:24-CV-04071-WHO
FIRST AMENDED COMPLAINT

1

2    Dated:  August 1, 2025

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:  _____*/s/ Kelly M. Knoll*_____
          Kelly M. Knoll
          kknoll@wsgr.com

Counsel for Defendant
YOUTUBE, LLC