UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DASHAY LOUIS HALL,<br><br>    Plaintiff,<br><br>    v.<br><br>YOUTUBE, LLC,<br><br>    Defendant. | Case No. 24-cv-04071-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DENYING MOTION FOR SANCTIONS**<br><br>Dkt. Nos. 30, 37. |

Plaintiff DaShay Hall Sr., a content creator who operates several YouTube channels, filed this suit against YouTube alleging that it mishandled DMCA[1] takedown notices he filed against other content creators and notices filed against his content. I dismissed Hall's original complaint with leave to amend in May 2025. May 2025 Order, Dkt. No. 28.[2] I explained that his breach of contract claims failed because he had not identified any breach of a specific promise in YouTube's Terms of Service ("TOS") or identified any conduct by YouTube that went beyond what the TOS allowed YouTube to do in its discretion. *Id*. at 6-9. I dismissed his tort claims because, as they were pleaded, they were based on YouTube's content moderation decisions and barred by Section 230 of the Communications Decency Act ("Section 230," 47 U.S.C. § 230). *Id*. at 9-12.

Hall filed a First Amended Complaint, and shortly thereafter a motion for sanctions against YouTube and its counsel in this case based on their alleged "retaliatory actions" disrupting his channels and defense counsel's failure to "acknowledge these serious issues." Dkt. Nos. 29, 30; Sanctions Mot. ¶¶ 1, 5. The FAC complains that YouTube engaged in improper acts in 2024 and

---

[1] Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 *et seq*.

[2] Hall's Copyright Act claim was dismissed without prejudice, but without leave to amend. May 2025 Order at 5-6.

2025 with respect to Hall and his YouTube channels, specifically: (i) YouTube demonetized his channel for 3 months in 2024 based on purported violation of "reused content" of others; (ii) YouTube failed to handle DMCA notices and counter-notices appropriately and failed to address the misuse of DMCA notices; (iii) YouTube failed to appropriately handle racist attacks, systemic abuse, and harassment directed to Hall from other content creators; (iv) YouTube suspended Hall's channel for seven days in February 2025 based on false allegations that Hall had "sexualized a minor;" and (v) YouTube has engaged in a pattern of retaliatory channel suspensions. FAC ¶¶ 16-65.

YouTube moves to dismiss the FAC, arguing again that Hall's claims are barred by its TOS and Section 230. Dkt. No. 37.[3]

**DISCUSSION**

**I.    BREACH OF CONTRACT CLAIM (COUNT I)**

In the May 2025 Order, I dismissed Hall's breach of contract claims because Hall had not identified with specificity the provisions of YouTube's TOS or any other contract that he contended YouTube breached. May 2025 Order at 6-8. Even "more problematic" for Hall was the fact that YouTube's TOS reserved broad discretion to YouTube to remove or retain content and disclaimed any obligation to host content. *Id*. at 8-9. Hall was given leave to amend to not only identify the specific provisions of YouTube's TOS or Community Guidelines that he alleges YouTube violated but also to state facts that YouTube "acted in bad faith or [] otherwise took acts [] that went beyond its handling of his DMCA notices and counter-notices, closing or reopening his challenge, or failing to remove content he found objectionable." *Id*. at 9.

In the FAC, Hall realleges a breach of contract claim based on YouTube's breach of: (i) TOS regarding "DMCA/Copyright Procedures, Licensing Terms, and Policies Against Abuse," FAC ¶ 71a; (ii) YouTube's "duty" to enforce its Community Guidelines, *id*. ¶ 71b; (iii) violation of YouTube's monetization policies in its TOS, *id*. ¶ 71c; (iv) breach of the TOS "Account

---

[3] The factual background of this case and the legal standards are incorporated from the May 2025 Order and will not be repeated here.

Suspension & Termination" provision; (v) and that the conduct just mentioned breached YouTube's implied covenant of good faith and fair dealing. *Id*. ¶ 71e. This claim fails again for numerous reasons.

First, as before, Hall attaches and references the YouTube TOS from India, not the TOS that would govern a user in the United States. *See* FAC ¶¶ 9, 70, Ex. AA (at ECF pgs. 69-84).

Second, even if that TOS applied to Hall, he still fails to identify any specific promises in the TOS or in the Community Guidelines that he believes YouTube breached. As before, Hall makes general references to violations of the TOS and Community Guidelines but does not identify any language in those policies where YouTube promised to do anything or take specific actions that YouTube then breached.

Third, and most significantly, Hall has not alleged conduct in violation of the TOS or incorporated Community Guidelines that goes *beyond* YouTube's "handling of his DMCA notices and counter-notices, closing or reopening his challenge, or failing to remove content he found objectionable." May 2025 Order at 9. Each of the acts Hall complains of in his FAC concerns how YouTube handled the DMCA notices and counter notices, what content of Hall or third-parties YouTube kept up or took down, and YouTube's suspension of his channel for three months in 2024 and for seven days in 2025. Those acts cannot constitute a breach of YouTube's TOS because the TOS expressly allows YouTube discretion in those matters. May 2025 Order at 7-8.

At base, Hall's complaints were and remain over how YouTube handled the DMCA notices and how it handled Hall's or third-party content and complaints regarding the same. *See, e.g*., FAC ¶ 71.b.1. (alleging violations of "YouTube's Community Guidelines (Exhibit UU, e.g., sections on 'Harassment & cyberbullying policies,'; 'Child safety policy,' and EDSA provisions 'Spam, deceptive practices & scams policies,'; 'Overview' on equal enforcement; policy on 'Encouraging Terms of Service violations'" based on YouTube's handling of third-party content or content posted by Hall).[4]

---

[4] In Opposition, Hall argues that YouTube violated its "Child safety policy" when it suspended his channel in 2025 based on a determination that content Hall posted violated its policy about "sexualization of a minor." Oppo. at 4. As explained below, that determination was content moderation by YouTube and protected by Section 230 immunity.

1  The most specific Hall's FAC gets is where he alleges a breach of "YouTube's
2  Monetization Policies (incorporated by TOS) and its communications (*e.g*., from "Emma," Exhibit
3  KK) establish the terms for channel monetization," and a breach of "YouTube's TOS ("Account
4  Suspension & Termination,") and Community Guidelines (strike system,) [that] dictate procedures
5  for account actions."  FAC ¶ 71c.1; FAC ¶¶ 23-25 & 71.d.1 (suspension of account based on
6  alleged violation of copyright, but the copyrighted material was available to use from "YouTube's
7  Audio Library" which provides "licenses for use").  But Hall identified nothing in the unidentified
8  "monetization policies" or Community Guidelines that could have bound YouTube.  *See Prager*
9  *Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1038 (2022) ("the community guidelines in no way
10 purport to bind defendants to publish any given video, or to remove a video only for violation of
11 those guidelines").
12 Regarding the "account" suspension, YouTube points out that Hall's YouTube *account*
13 was not suspended; only his channel was suspended for periods of time.  Mot. at 8-9.  But, in any
14 event, the TOS expressly allow YouTube broad discretion in terminating accounts or restricting
15 access to services.  The TOS also allows users a right of appeal, which Hall admits he utilized.
16 FAC ¶ 18.
17 With respect to the monetization claim, Hall does not identify anything in the TOS that
18 governs monetization.  While some of the exhibits attached to the FAC reference *other* agreements
19 (for example the AdSense Terms of Service or YouTube's Partner Program), Hall fails to identify
20 any provision of any agreement in his FAC or in the Opposition governing monetization that
21 YouTube violated.  *See Sweet v. Google Inc*., No. 17-CV-03953-EMC, 2018 WL 1184777, at *9
22 (N.D. Cal. Mar. 7, 2018) (noting that YouTube has "complete discretion under the YouTube
23 Partner Program Terms" whether to display ads in connection with content).
24 Regarding the suspension of his account for copyright violation, Hall appears to complain
25 that he used "licensed" music from YouTube's Audio Library, but YouTube nonetheless
26 suspended his account for copyright infringement based on DMCA notices filed by third-parties.
27 FAC ¶¶ 23-25.  Hall admits that the DMCA notices of infringement came from a third-party, but
28 because he had used "licensed" music from the Audio Library, he argues that YouTube wrongly

4

responded to the DMCA notice and "demonetized" his channel. FAC ¶¶ 23-25, 71a.1. He does not identify language from the TOS that YouTube allegedly violated, instead identifying videos explaining YouTube's copyright protection efforts. *See* FAC ¶ 71a.1.; Oppo. at 8 (citing "Copyright Basics" and "Inside Content ID"). Hall refers generally to these videos but does not identify *any* specific language from these videos that he contends is the contractual promise YouTube violated. Even if he had, however, generalized public statements of intent do not create enforceable contractual promises. *See Prager Univ.,* 85 Cal. App. 5th at 1040 (Google's "generalized public statements regarding their monitoring and filtering practices do not give rise to a state law contractual obligation to regulate their publishing decisions"). Hall has identified no promise by YouTube that precluded it from suspending his channel based on a DMCA notice filed by a third-party.

Finally, Hall's assertions that YouTube violated some unidentified promises *implied* in the TOS or Community Guidelines fails. *See Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (noting the implied covenant of good faith and fair dealing cannot be extended to create obligations not contemplated by the contract); *Ebeid v. Facebook, Inc*., No. 18-CV-07030-PJH, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (an implied covenant cannot create duties that contradict express terms of the contract).

YouTube's motion to dismiss the breach of contract claim is GRANTED. I gave Hall the opportunity to amend to attempt to allege a claim based on a specific and enforceable contractual promise by YouTube, but he could not do so. This claim is now DISMISSED with prejudice.

**II.   TORT CLAIMS - COUNT II "NEGLIGENCE" & COUNT III "TORTIOUS INTERFERENCE WITH CONTRACT"**

In his FAC, Hall realleges two of his tort claims. First, he asserts a claim for negligence based on YouTube's alleged violation of its "duty of care" in: (i) implementing and enforcing its DMCA takedown process; (ii) implementing and enforcing its Community Guidelines; (iii) accurately and fairly applying its monetization policies; and (iv) failing to comply with its "public representations" about having "zero tolerance" for copyright abuse and protecting "Fair Use." FAC ¶ 75. He alleges that YouTube breached those duties in failing to handle DMCA claims

5

1  appropriately, negligently failing to protect Hall from harassment, misapplying its child safety

2  policy to accuse Hall of "sexualizing a minor," and demonetizing plaintiff's channel. *Id*. ¶ 76.

3  Second, he alleges a claim for "tortious interference with contract and prospective economic

4  advantage," based on claims that YouTube interfered with his "Adsense" monetization agreement

5  with Google//YouTube, revenue from his channel and chats, and "actual and reasonably expected

6  potential sponsorship agreements." *Id*. ¶ 81.

7        In the May 2025 Order, I dismissed the negligence claim because under California law

8  YouTube was under no duty to protect Hall from "conduct of third parties – here the alleged

9  allowing of content on YouTube sites that violated Hall's alleged copyrights or harassed him or

10  his family – absent the existence of a legally recognized 'special relationship' between the parties

11  giving rise to an 'affirmative duty' to protect. *See Jane Doe No. 1 v. Uber Techs., Inc*., 79 Cal.

12  App. 5th 410, 419–20 (2022)." May 2025 Order at 10. Hall has not alleged any special

13  relationship. At most his relationship to and interaction with YouTube is the same as any other

14  content creator. As I explained before, "[o]nline platforms do not owe their users a general duty

15  of care to manage or investigate DMCA takedown notices or counter-notices or to respond

16  harassment reports unless the contract entered into 'itself imposes a duty to protect.'" *Id*. (citing

17  *Ginsberg v. Google Inc*., 586 F. Supp. 3d 998, 1009 (N.D. Cal. 2022) (no "authority for the

18  proposition that Google's publication of guidelines for its app developers creates an enforceable

19  duty to any purchaser of an Android device")); *see also Bogard v. TikTok Inc*., No. 24-CV-03131-

20  VKD, 2025 WL 604972, at *9 (N.D. Cal. Feb. 24, 2025) ("defendants merely offer an opportunity

21  for users to report videos that users believe violate Defendants' policies or guidelines to

22  Defendants for review. Plaintiffs plead no facts suggesting that Defendants have undertaken an

23  obligation to remove immediately any video Plaintiffs or other users report."). Hall identifies

24  nothing in the TOS, Community Guidelines, or communications with YouTube that imposed such

25  a duty.[5]

---

[5] In his Opposition, Hall contends that YouTube does not have a right to "defame" him by suspending his account for false "sexualization of a minor." Oppo. at 9; *see also* FAC ¶ 47. But Hall is not suing for defamation. Hall is suing YouTube over its content-moderation decision to suspend his account. Even if suing for defamation, there is nothing in Hall's exhibits to suggest

6

1    I dismissed Hall's prior tortious interference with existing contracts claim because he
2 failed to "identify any specific relationships or contracts with which YouTube allegedly
3 interfered." May 2025 Order at 10-11. He still does not identify any specific relationship, only
4 that YouTube's acts interfered with his ability to earn income from viewers of his channels and
5 unidentified "sponsors" and "advertisers." FAC ¶ 81. Those vague allegations remain
6 insufficient. The only specific contract identified is the AdSense monetization agreement. *Id*.
7 However, as noted above, that is a contract with YouTube where it retained "complete discretion"
8 whether to serve ads with particular content. *See Sweet*, 2018 WL 1184777 at *9.

9    Moreover, "tortious interference only possibly applies when a defendant interfered with a
10 contract between a plaintiff and a third party," and not the defendant. *See Finley v. YouTube, LLC*,
11 No. 20-CV-04888-RS, 2022 WL 704835, at *1 (N.D. Cal. Mar. 9, 2022). To the extent Hall is
12 alleging that he might have secured "direct donations" from his audience members (FAC ¶ 81), he
13 never alleges that prior to or after his three month suspension in 2024 and seven day suspension in
14 2025 any identified audience members had made a donation based on the content of the suspended
15 challenge, that the audience member was likely to make another donation, and that YouTube knew
16 about payments Hall had been receiving or expected from third-parties. *See Olson v. World Fin.*
17 *Grp. Ins. Agency, LLC*, No. 24-CV-00477-EJD, 2024 WL 3498572, at *3 (N.D. Cal. July 19,
18 2024).

19    Finally, as before, all of Hall's claims are based on actions YouTube's content moderation:
20 they are based on acts YouTube took or did not take with respect to DMCA notices and
21 suspension or failure to suspend Hall's or other content creators' channels. For that reason, Hall's
22 tort claims are barred by Section 230 immunity. May 2025 Order at 11-12 (discussing *Barnes v.*
23 *Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) (failure to remove content cannot support tort
24 liability given Section 230)).

25    In his Opposition, Hall relies on three new factual allegations to support his claims. He
26 says that YouTube's systems relied on a "false" allegation that Hall's content "sexualized a

---

YouTube "published" that accusation. *See, e.g., Mahoney v. Meta Platforms, Inc.*, 710 F. Supp. 3d 771, 779 (N.D. Cal. 2024) (statement must be published to a third person).

1  minor," which led to the suspension of his channel for 7 days in 2025; that YouTube accepted
2  "fake court papers" in January 2025 which, despite Hall's position that the papers were fake,
3  YouTube refused to act on; and, that YouTube retaliated against him when it blocked content on
4  his page immediately after he filed his Amended Complaint. Oppo. [Dkt. No. 38] at 2. Hall
5  considers these allegations evidence of "active misconduct." *Id*. But what he misses is that his
6  own allegations demonstrate that his ongoing complaints against YouTube are based on
7  YouTube's content moderation decisions--acting or refusing to act on DMCA notices and counter-
8  notices, deciding whether to block content, deciding whether to suspend channels. That conduct is
9  immunized under Section 230 and cannot form the basis of an actionable tort claim.

Hall has not been able to allege an actionable tort claim that does not hinge on general content moderation decisions or otherwise falls outside the scope of Section 230's immunity. His tort claims are DISMISSED without leave to amend.

### III.   MOTION FOR SANCTIONS

On May 30, 2025, Hall filed a motion for sanctions based on a "persistent and escalating pattern of retaliatory" actions based on YouTube's "direct actions, its automated systems, of failure to curb abuse by third parties." Dkt. No. 30 at 1-2. The actions identified include the allegations in the FAC (discussed above), but also that hours after his filed his FAC one of his videos "was targeted with a campaign of harassment" from a third-party content creator who was able to get Hall's video blocked. Hall then complains that YouTube's outside counsel in this action disregarded Hall's rights by mischaracterizing my May 2025 Order, issued "thinly veiled" threats that YouTube would seek fees against him if he continued this action, and refused to immediately respond to his many requests for assistance when Hall identified ongoing third-party misconduct against his YouTube channel. *Id*. at 6-9.

The motion for sanctions is DENIED. The basis for the motion of sanctions – like the basis for the FAC – is YouTube's content moderation decisions. Hall is unhappy with how YouTube has responded to DMCA notices and its subsequent actions. For the reasons identified above, YouTube's TOS give YouTube broad discretion in making its content moderation

decisions and Section 230 bars tort claims based on those content moderation decisions.[6]

## CONCLUSION

Having had an opportunity to allege a viable contract or tort claim but not being able to based on the conduct Hall complains of, this case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: November 24, 2025



William H. Orrick
United States District Judge

---

[6] Even had Hall complied with Rule 11's notice requirements for sanctions, which he did not, Hall's allegations regarding outside counsel's conduct fall far below any possible sanctionable conduct. *See Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (discussing Rule 11's safe harbor provision). Hall's desire to skip over the DMCA notification and appeal processes to seek direct intervention from outside counsel, and outside counsel's response, does not support his request for sanctions under Rule 11, Rule 26, or Rule 37. The dismissal of this action renders Hall's request for a Protective Order under Rule 26 MOOT.