UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DASHAY HALL SR., <br><br> Plaintiff, <br><br> v. <br><br> YOUTUBE, LLC <br><br> Defendant, | CASE NO.: 3:24-cv-04071 <br><br> **PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e) AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

**Judge:** Hon. William H. Orrick

## I. INTRODUCTION

1. Plaintiff DaShay Louis Hall respectfully moves this Court under Federal Rule of Civil Procedure 59(e) to alter or amend the Judgment entered on November 24, 2025. This motion is submitted to present newly discovered evidence of active federal racketeering litigation that was not previously before the Court, and to correct manifest errors of fact and law that render the Dismissal Order legally unsustainable.

2. Just as this Court granted reconsideration in *Contour IP Holding, LLC v. GoPro, Inc.* upon the presentation of factors that altered the case's landscape, Plaintiff

submits that the revelation of a 50-defendant criminal enterprise operating on Defendant's platform—and the immediate, retaliatory "Cyber Strike" launched hours after this Court's dismissal—constitutes the "extraordinary circumstances" required to reopen this case to prevent manifest injustice.

3. The Court's current Order does not merely dismiss a complaint; it effectively grants a trillion-dollar corporation the judicial blessing to profit from federal crimes, facilitate witness tampering, and brand a *pro se* litigant as a child sex offender without evidence. These rulings stand in direct conflict with binding Ninth Circuit precedent. Plaintiff seeks correction here; failing that, these clear errors will be presented for *de novo* review.

## II. JUDICIAL PROPRIETY AND TIMELINESS

4. **Procedural Impossibility (*Hall v. Brown*):** Plaintiff filed the federal RICO action in the Western District of Oklahoma on Friday, November 21, 2025. This Court issued its Dismissal Order on the very next business day, Monday, November 24, 2025. Plaintiff had no realistic procedural opportunity to update the record with this filing before the Dismissal was entered.

5. **Judicial Restraint (*Winters v. Torain*):** Plaintiff discovered the *Winters* fraud case on November 5, 2025. At that time, Plaintiff was already in the sixth month of waiting for a ruling on the last two motions submitted to this Court. Plaintiff exercised judicial propriety by awaiting the Court's pending ruling on the Motion to Dismiss rather than burdening the docket with supplemental filings.

However, the Court's subsequent ruling characterizing YouTube's acceptance of "fake papers" as a discretionary "moderation decision" makes this evidence essential to prove that the "fake papers" are not an isolated moderation issue, but a known, systemic fraud ring.

### III. NEWLY DISCOVERED EVIDENCE

6. **The Federal RICO Litigation (*Hall v. Brown*):** On November 21, 2025, Plaintiff filed *Hall v. Brown et al.*, Case No. 5:25-cv-01401-PRW (W.D. Okla.). This action charges a criminal enterprise of 50 defendants with Civil RICO for operating a "Cyber Unit" to commit continuous illegal overt acts directly on Defendant's platform. These acts include soliciting funds based on wire fraud, running "Denounce or Destroy" extortion schemes, issuing death wishes, admitting to interstate travel to seek physical confrontation with Plaintiff, and explicitly soliciting sex with Plaintiff's wife and issuing threats against Plaintiff's 16-year-old daughter.

7. This new evidence proves that the "reports" filed against Plaintiff were not good-faith safety flags, but overt acts of racketeering. The Court's assumption of "good faith moderation" is contradicted by this evidence of a coordinated criminal enterprise that Defendant knowingly facilitates.

8. **Systemic Fraud Ring (*Winters v. Torain*):** Plaintiff has discovered *Winters v. Torain*, Case No. 3:25-cv-09549-VC (N.D. Cal. filed Nov. 5, 2025). This complaint independently verifies that actor "Troi Torain" systematically files sham

Copyright Claims Board (CCB) actions to override DMCA counter-notifications. This proves that Defendant's acceptance of "fake court papers" is not a moderation error, but participation in a known fraud ring.

9. Crucially, Troi Torain has published a video—currently hosted and monetized on Defendant's platform as of this filing—that explicitly instructs users on how to weaponize Defendant's copyright tools to commit fraud. Defendant is not merely a passive host; it is distributing the "instruction manual" for the very fraud compromising this litigation. Furthermore, Defendant continues to host several videos of Jedidiah Brown committing federal crimes. Plaintiff notified every available channel—including "TeamYouTube" on Twitter/X, internal support, and Defendant's own Counsel of Record in this action—yet Defendant refuses to act. Under Ninth Circuit precedent, a platform cannot claim "Good Samaritan" immunity when it knowingly facilitates and profits from criminal activity after receiving specific notice of the illegality. Defendant cannot claim it "didn't know" when its own lawyers were notified.

10. **The "Green Light" Retaliation:** This Court entered the Dismissal Order at 2:01 AM on November 25, 2025. At 5:46 AM—less than four hours later—Defendant issued a strike against Plaintiff's main channel, terminating his business. The primary RICO Defendant (Jedidiah Brown) livestreamed a confession video hosted by YouTube, stating: "When I decided to strike, you're gone in a day" and "Strike, cyber strike." RICO Co-conspirator Cooking With Frank published a video titled **"Jedidiah Brown INA Cracks Down On Real Late Night**

**Crybaby"**, explicitly linking the attack to the Enterprise and confirming the strike was a coordinated group enforcement action. Cooking With Frank stated that there is nothing wrong with "cyber bullying". The plaintiff filed two detailed legal appeals regarding this strike. The defendant rejected them in 5 minutes and 11 minutes, respectively. It is physically impossible for a human to review long-form video content and legal documentation in such time, proving the "moderation" was a sham automated filter, not a good-faith review.

11. **The "Double Tap" Chain Retaliation:** On December 3, 2025, the very day Plaintiff's initial 7-day retaliatory suspension expired, Defendant immediately issued a second strike resulting in a 14-day suspension. This second strike was issued under a vague "3rd Party Content" policy for a live stream reaction, explicitly bypassing the DMCA's notice-and-takedown requirements. Defendant admitted the strike was triggered by "Discovery Communications" content but refused to process it as a copyright claim, thereby denying Plaintiff the statutory right to file a counter-notification.

12. **Proof of Selective Enforcement:** Defendant claimed the strike was for "Discovery" content. This is demonstrably false pretext. Plaintiff was reacting to a third-party YouTube video that currently has over 60,000 views and 5,000 likes. That source video remains live and monetized on Defendant's platform. Plaintiff's reaction video had fewer than 500 views, yet Defendant's system "caught" the Plaintiff while ignoring the massive source video. This disparate treatment proves that Defendant is not enforcing copyright; it is weaponizing its

tools to selectively silence a litigant while allowing the actual content to remain profitable. This is bad faith retaliation, not moderation.

## IV. MANIFEST ERRORS OF FACT

13. **The "Indian Terms of Service" Error:** The Court dismissed contract claims based on a finding that Plaintiff attached the "Terms of Service for India". This is a manifest error of fact. Plaintiff attached the United States Terms of Service (Exhibit AA). Page 11 explicitly states: "All claims... will be governed by California law... and will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA". A dismissal based on a clerical misreading of the controlling contract's jurisdiction clause is void and requires correction.

14. **The "AdSense" Distinction Error:** The Court dismissed interference claims assuming YouTube and AdSense are the same entity. This is factually incorrect. AdSense and YouTube are legally distinct entities with separate contractual terms. AdSense is a monetization service used for third-party websites and blogs. By terminating Plaintiff's YouTube channel based on a defect, Defendant Tortiously Interfered with Plaintiff's separate, independent contract with AdSense.

## V. MANIFEST ERRORS OF LAW

15. **Defamation (*Enigma*):** The Court's ruling regarding the suspension for "sexualizing a minor" is a grave miscarriage of justice. Defendant did not merely "moderate" content; Defendant affirmatively created and published a verifiably

false label: that Plaintiff is a child predator. Under *Enigma Software v. Malwarebytes*, 938 F.3d 1026 (9th Cir. 2019), Section 230 does not immunize a provider who labels material with "verifiably false" designations driven by animus. Defendant accused Plaintiff of a heinous crime. This is defamation per se created by the Defendant, not third-party content.

16. **Specific Licenses (*Barnes*):** The Court characterized Plaintiff's reliance on the "Built To Last" license and the Audio Library license as reliance on "general statements." This violates *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). Plaintiff held a specific license provided by Defendant. When Defendant strikes a user for utilizing content Defendant sold or licensed to them, it is a breach of that specific contract. It is not "content moderation."

17. **Fake Court Papers (*Roommates.com*):** The Court categorized Defendant's acceptance of forged court papers (CCB claims) as a "moderation decision." This violates *Fair Housing Council v. Roommates.com*, 521 F.3d 1157 (9th Cir. 2008). Immunity does not apply where a defendant "materially contributes" to illegality. By knowingly accepting falsified legal documents to remove content, Defendant is not acting as a publisher; it is facilitating fraud upon the Court.

18. **Witness Tampering (*Internet Brands*):** The record shows Defendant targeted Plaintiff's business with strikes during the pendency of this litigation and in direct response to his legal filings. Under *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), a platform is not immune when it fails to warn users of a known danger generated by the platform itself. By dismissing these claims, the

Court has signaled that a defendant may use its platform to financially strangle a federal litigant for accessing the courts.

19. **Good Faith Requirement:** The Court's ruling ignores Section 230(c)(2)(A), which restricts immunity to "good faith" actions. Plaintiff presented evidence that Defendant operates a "pay-to-play" system—accepting impossible strikes (22 minutes of audio in a 13-minute video)—that allows a "crime syndicate" to extort creators. By dismissing these allegations without discovery, the Court effectively holds that Defendant may profit from a racketeering enterprise so long as it occurs on their servers.

20. **DMCA Violations and Discretion:** The Court dismissed DMCA claims citing Defendant's "broad discretion." A private contract cannot supersede a Federal Statute. Defendant refused to restore content by accepting "fake papers" (CCB claims) and mere "intent" to sue, violating Section 512(g). Furthermore, under California law (which governs the TOS), a party granted discretionary power must exercise it in good faith. *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342 (1992). Defendant's use of "discretion" to circumvent federal copyright law and retaliate against a litigant is the definition of bad faith, rendering their contractual defense void.

21. **Spoliation and Bad Faith:** The Court erred by treating Defendant's automated strikes as "routine" content moderation or isolated "glitches." This finding is legally impermissible given the extensive Ninth Circuit and Supreme Court precedent governing bad faith and evidence preservation.

22. **Inference of Retaliation (*Bell* & *Kama*):** The Ninth Circuit holds that a retaliatory motive can be inferred when an adverse action follows closely on protected activity. Defendant struck Plaintiff's channel less than 4 hours after the Dismissal Order. This is not an isolated incident; it is an ongoing pattern. As detailed in Plaintiff's Motion for Sanctions filed in May 2025, Plaintiff has suffered severe adverse actions immediately following nearly every significant docket event. The Court's failure to recognize this pattern is a manifest error.

23. **Aggregate Context (*Thomas*):** In *Thomas v. County of Riverside*, 763 F.3d 1162 (9th Cir. 2014), the Ninth Circuit held that retaliatory actions must be viewed in context, not in isolation. The Court must view the "Green Light" strike, the "Double Tap" strike, and the "Discovery" pretext in the aggregate.

24. **Failure to Warn (*Internet Brands*):** Defendant continues to host video confessions where bad actors admit to the attacks. Under *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), Defendant loses Section 230 immunity when it possesses specific knowledge of a known danger to a user and fails to warn or act. By hosting the 'confession' videos while striking the Plaintiff, Defendant is knowingly exposing the Plaintiff to the very danger they are obligated to warn him against.

25. **Intentional Spoliation (*Leon* & *Jones*):** In *Jones v. Riot Hospitality Group*, 95 F.4th 730 (9th Cir. 2024) and *Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006), the Ninth Circuit established that deleting ESI or "wiping" files is sanctionable spoliation. Defendant's termination of Plaintiff's channel

effectively "wiped" the evidence required to adjudicate this case. This intentional destruction warrants an adverse inference.

26. **Duty to Suspend "Bots" and Reckless Frivolity (*Apple, Fink, Haeger*):**

    Under *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132 (N.D. Cal. 2012), a litigant has a duty to suspend its "routine destruction policies" (bots) once litigation commences. Furthermore, under *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001), deploying destructive bots against a known litigant constitutes reckless disregard for the integrity of these proceedings.

## VI. CONCLUSION

27. The Court's Order protects a system where "fake court papers" are honored, legitimate contracts are ignored, and users are falsely branded as sex offenders by an unaccountable corporate entity. This is not the law of the Ninth Circuit. To prevent manifest injustice and correct clear factual errors, Plaintiff requests the Court **VACATE** the dismissal and grant leave to file the Second Amended Complaint.

Respectfully submitted,


Dated: 12/3/2025


By: __/s/ DaShay Hall Sr. _____

DaShay Hall Sr.

629 Westridge Court

Yukon, OK 73099

Tel: (317) 697-0781