**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |  |
|---|---|---|
| DASHAY HALL SR., | ) ) ) | **CASE NO.:** 3:24-cv-04071 |
| Plaintiff, | ) ) |  |
| v. | ) ) | **SECOND AMENDED COMPLAINT** |
| YOUTUBE, LLC | ) ) |  |
| Defendant, | ) |  |

**Judge:** Hon. William H. Orrick

**SECOND AMENDED COMPLAINT OF DASHAY HALL SR.**

## I. INTRODUCTION

1. Plaintiff DaShay Louis Hall files this Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 15(a)(2) and the concurrent Rule 59(e) Motion to Alter or Amend Judgment.

2. This action arises from Defendant YouTube, LLC's systematic retaliation against a federal litigant, its active participation in a fraud ring involving "fake court papers," its breach of specific licensing agreements, its defamatory branding of Plaintiff as a child sex offender, and its intentional spoliation of evidence during

active litigation.

3. **Cure of Defects:** Plaintiff explicitly cures the defects of the prior dismissal by: (a) attaching the correct **United States Terms of Service** (Exhibit AA); (b) identifying **specific contractual promises** violated under the standard set in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Circuit 2009); (c) pleading **affirmative conduct** (creation of labels and failure to warn) that falls outside Section 230 immunity under *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 938 F.3d 1026 (9th Circuit 2019) and *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Circuit 2016); and (d) distinguishing the separate **AdSense** contract.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (Federal Question) as this action involves claims under the Digital Millennium Copyright Act (17 U.S.C. § 512) and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964).

5. Venue is proper in this District pursuant to the **United States Terms of Service** (Exhibit AA), which mandates exclusive jurisdiction in Santa Clara County, California.

## III. FACTUAL ALLEGATIONS

### A. The Contractual Relationship

6. Plaintiff entered into a binding contract with Defendant via the **United States**

**Terms of Service** (Exhibit AA). This contract includes specific licenses for the use of Defendant's "Audio Library," which guarantee users the right to use provided music without copyright strikes.

7. Plaintiff also holds a separate, distinct contract with **Google AdSense** for revenue generation. This contract operates independently of the YouTube platform, covering monetization on third-party websites and blogs.

## B. The "Money Boy Trey" Campaign: Negligence and Product Defects

8. **The "Impossible Strike":** On May 1, 2024, Defendant accepted and processed a copyright claim from bad actor "Money Boy Trey" (Mark Avington)—a known enforcer for the Jedidiah Brown enterprise—alleging copyright infringement for **22 minutes of audio** within a video that was only **13 minutes long**.

9. It is factually impossible for a 13-minute video to contain 22 minutes of infringing audio. Defendant's acceptance of this claim proves that its review system is not a "moderation" process but a defective product lacking basic logical safeguards, constituting negligence.

10. **The "Silent Strike":** On April 30, 2024, Defendant accepted a music copyright claim on a video that contained **no music whatsoever**.

11. **Affirmative Misrepresentation:** When Plaintiff inquired about these strikes, Defendant's support agents falsely stated the claims were from "Music Labels" (Exhibit BB), when they were in fact from a known harasser. This constitutes negligent misrepresentation.

**C. The "Troi Torain" Fraud Ring and Rejection of Valid Counter-Notices**

12. In January 2025, third-party actor Troi Torain submitted fraudulent "court papers" to Defendant to override Plaintiff's legitimate DMCA counter-notifications.

13. These documents were sham filings with the Copyright Claims Board (CCB) that were never served and did not constitute a court order to restrain the subscriber.

14. **Systemic Fraud:** Plaintiff has discovered *Winters v. Torain*, Case No. 3:25-cv-09549-VC (Northern District of California), confirming that Defendant is aware that Troi Torain operates a systematic fraud ring using these tactics.

15. **Rejection of Valid Counter-Notifications:** Prior to the "fake papers" incident, Plaintiff submitted multiple DMCA counter-notifications that fully satisfied all statutory requirements of 17 U.S.C. § 512(g)(3) (including identification of material, contact information, statement under penalty of perjury, and consent to jurisdiction).

16. Despite these counter-notifications being legally complete, Defendant arbitrarily rejected them, demanding "better reasons" or additional information not required by the statute. By refusing to process compliant counter-notifications, Defendant blocked Plaintiff from the statutory remedy Congress mandated for restored content.

17. **Instruction Manual for Fraud:** Troi Torain has published a video on Defendant's platform explicitly instructing users on how to weaponize

Defendant's tools to commit this specific fraud. Defendant continues to host and monetize this "how-to" guide for illegality.

18. By knowingly accepting these forged documents to maintain a takedown, Defendant "materially contributed" to the illegality, forfeiting Section 230 immunity under the standard established in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Circuit 2008).

## D. Breach of Specific Licenses: The "Built To Last" Incident

19. Plaintiff utilized the song "Built To Last" by Neffex in his content. This specific audio track was provided directly by Defendant to Plaintiff via Defendant's own **Audio Library**.

20. Defendant's Audio Library terms constitute a specific license and promise that the content is safe for use.

21. Despite this specific license, Defendant issued a copyright strike against Plaintiff for using the exact song it licensed to him. When confronted, Agent "Valdirene" admitted: "There is no manual override" (Exhibit J).

22. This constitutes a breach of a specific contractual promise under *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Circuit 2009).

## E. The "Sexualization of a Minor" Defamation (The *Enigma* Exception)

23. Defendant did not merely remove Plaintiff's content; Defendant **affirmatively created and published** a banner labeling Plaintiff's video as a violation of "Child Safety" policies regarding the "Sexualization of a Minor" (Exhibit XX).

24. This label was verifiably false. Plaintiff's video was an anti-predator report exposing alleged abuse.

25. By creating this false criminal label, Defendant became an Information Content Provider (ICP) regarding the label itself. Under *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 938 F.3d 1026 (9th Circuit 2019), creating verifiably false labels driven by animus is not protected by Section 230.

## F. Failure to Warn of Known RICO Danger (The *Internet Brands* Exception)

26. On November 21, 2025, Plaintiff filed *Hall v. Brown*, Case No. 5:25-cv-01401-PRW (Western District of Oklahoma), detailing a 50-defendant RICO enterprise ("The Cyber Unit") operating on Defendant's platform.

27. Defendant hosts videos where these actors admit to federal crimes, including extortion ("I have a team to false strike channels") and witness tampering.

28. Plaintiff notified Defendant's support, "TeamYouTube" on Twitter/X, and Defendant's Counsel of Record regarding these specific threats.

29. Despite specific notice, Defendant failed to warn Plaintiff of this known danger generated by its platform. Under *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Circuit 2016), a platform has a duty to warn users of known risks it facilitates.

## G. The "Blind Eye" to the Jedidiah Brown Enterprise and Tortious Interference

30. **The Pattern of Abuse:** Defendant has long been on notice that Jedidiah Brown and his "Investigate n Advocate" (INA) enterprise utilize Defendant's platform to commit crimes. Despite this, Defendant has repeatedly turned a "blind eye" to

these actors, allowing them to remain active and monetized while punishing the Plaintiff for reporting them.

31. **Tortious Interference with Colleagues ("Denounce or Destroy"):** Defendant knowingly facilitated an extortion scheme against Plaintiff's colleague, "Burgundy Blue." As detailed in the RICO Complaint (*Hall v. Brown*, Count XII), Jedidiah Brown used Defendant's platform to broadcast a "48-hour notice" ultimatum, demanding she denounce the Plaintiff or face "exposure." When she refused, Brown used Defendant's platform to doxx her. Defendant was notified of this extortion in real-time but refused to act, tortiously interfering with Plaintiff's professional relationships.

32. **Mother's Day Stalking:** Plaintiff reported specific threats from Jedidiah Brown, including the "Mother's Day Stalking" incident where Brown livestreamed his interstate travel to Plaintiff's home city with the stated intent to assault him. Defendant's support team reviewed these reports and found no violation, thereby ratifying the stalking and witness intimidation.

33. **Liability for "Enforcers":** Defendant was notified that "Money Boy Trey" (Mark Avington) and "Troi Torain" act as enforcers for this enterprise, filing false strikes to silence critics. By failing to terminate these repeat infringers and bad actors as required by its own DMCA policy, Defendant is liable for their continued harassment of the Plaintiff.

## H. The Retaliation: "Green Light" and "Double Tap"

34. **The "Green Light" Strike:** On November 25, 2025, less than four hours after this Court issued its Dismissal Order, Defendant issued a strike terminating Plaintiff's business.

35. **The Confession:** The primary RICO Defendant (Jedidiah Brown) livestreamed a confession video on Defendant's platform, stating: "When I decided (to) strike, you're gone in a day" and "Strike, cyber (team) strike." RICO Co-conspirator Cooking With Frank published a video titled **"Jedidiah Brown INA Cracks Down On Real Late Night Crybaby"**, explicitly linking the attack to the Enterprise and confirming the strike was a coordinated group enforcement action. Cooking With Frank stated that there is nothing wrong with "cyber bullying".

36. **Sham Review:** Defendant rejected Plaintiff's detailed legal appeals in 5 minutes and 11 minutes, respectively. It is physically impossible for a human to review the long-form video content and legal citations in that time.

37. **The "Double Tap" Strike:** On December 3, 2025, immediately upon the expiration of a 7-day suspension, Defendant issued a second strike resulting in a 14-day suspension.

38. **Selective Enforcement:** Defendant claimed the December 3 strike was for "Discovery" content. This is pretext. Plaintiff was reacting to a third-party YouTube video (60,000+ views) that remains live. Plaintiff's video (<500 views) was struck. This disparate treatment proves bad faith retaliation.

39. **Spoliation:** By terminating the channel during active litigation, Defendant

intentionally destroyed ("wiped") critical Electronically Stored Information (ESI)—specifically video evidence required to adjudicate the Fair Use defenses. This violates the duty to preserve established in *Apple Inc. v. Samsung Electronics Co.*, 881 F. Supp. 2d 1132 (Northern District of California 2012).

## IV. CAUSES OF ACTION

**COUNT I: BREACH OF CONTRACT** *(Violation of Specific Licenses and Implied Covenant of Good Faith)*

40.    Plaintiff incorporates all preceding paragraphs.

41. **The Contract:** Plaintiff entered into a binding contract via the United States Terms of Service and specific Audio Library licenses.

42. **The Breach:** Defendant breached the specific "Built To Last" license by striking authorized content.

43. **Bad Faith:** Under *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342 (1992), discretionary power must be exercised in good faith. Defendant's use of discretion to retaliate against a litigant, ignore specific licenses, and facilitate fraud constitutes bad faith.

**COUNT II: DEFAMATION (LIBEL PER SE)** *(The "Sexualization" Label)*

44. Plaintiff incorporates all preceding paragraphs.

45. **The Statement:** Defendant published a banner stating Plaintiff's content violated policies regarding "Sexualization of a Minor."

46. **Falsity:** The statement was objectively false; the video was news commentary exposing predators.

47. **No Immunity:** Under *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 938 F.3d 1026 (9th Circuit 2019), Defendant is the creator of this specific label and is liable for the resulting reputational harm.

## COUNT III: TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS *(Interference with AdSense and Professional Colleagues)*

48. Plaintiff incorporates all preceding paragraphs.

49. **The Contracts:** Plaintiff holds a valid, separate contract with Google AdSense and valid business relationships with professional colleagues (e.g., Burgundy Blue).

50. **The Interference:** Defendant, knowing of these separate relationships, intentionally interfered with them. Defendant wrongfully terminated Plaintiff's YouTube channel (harming AdSense) and knowingly facilitated extortion schemes against Plaintiff's colleagues (harming professional relations).

51. **Separate Entities:** Defendant and AdSense are legally distinct entities; Defendant is not a party to the AdSense agreement.

## COUNT IV: MULTIPLE VIOLATIONS OF DMCA (17 U.S.C. § 512) *(Failure to Replace, Circumvention, Rejection of Valid Notices, and Failure to Terminate)*

52. Plaintiff incorporates all preceding paragraphs.

53. **Violation A: Failure to Replace Removed Material (17 U.S.C. § 512(g)):**

Under Section 512(g), an OSP must replace removed material within 10-14 business days upon receipt of a valid counter-notification unless notified that the claimant has filed a federal court action seeking a restraining order. Defendant violated this mandatory duty by refusing to restore Plaintiff's content based on "fake papers" (sham CCB filings from Troi Torain) and mere expressions of "intent" to sue, which do not satisfy the statutory requirement of a filed court action.

54. **Violation B: Circumvention of Statutory Counter-Notification Rights:** On December 3, 2025, Defendant utilized "Community Guidelines" strikes to enforce a copyright claim (admittedly triggered by "Discovery Communications") specifically to deny Plaintiff the statutory right to file a counter-notification under the DMCA. By reclassifying copyright disputes as "policy" violations, Defendant systematically deprives users of their due process rights mandated by Congress.

55. **Violation C: Failure to Terminate Repeat Infringers (17 U.S.C. § 512(i)):** To maintain Safe Harbor protection, Defendant must reasonably implement a policy to terminate repeat infringers. Defendant has been provided with conclusive evidence that "Money Boy Trey" (Mark Avington) and "Troi Torain" utilize the DMCA system to file fraudulent, abusive, and "impossible" strikes (e.g., claiming 22 minutes of audio in a 13-minute video). Despite this knowledge, Defendant has failed to terminate these repeat bad actors, thereby forfeiting its Safe Harbor protection.

56. **Violation D: Improper Rejection of Valid Counter-Notifications (17 U.S.C. § 512(g)(3)):** Defendant systematically rejected Plaintiff's counter-notifications that fully satisfied all statutory requirements (identification of material, contact information, statement under penalty of perjury, and consent to jurisdiction). Defendant imposed extra-statutory requirements, demanding "better reasons" or arbitrary additional information not required by law, effectively blocking Plaintiff's access to the restoration remedy mandated by Congress.

## COUNT V: NEGLIGENCE / FAILURE TO WARN *(Violation of Duty under Internet Brands)*

57. Plaintiff incorporates all preceding paragraphs.

58. **The Duty:** Defendant owed a duty under *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Circuit 2016) to warn Plaintiff of the known "Cyber Unit" racketeering enterprise operating on its platform.

59. **The Breach:** Despite specific notice of the extortion, witness tampering threats, and the activities of Jedidiah Brown, Money Boy Trey, and Troi Torain, Defendant failed to warn Plaintiff or suspend the bad actors. By turning a "blind eye" to these known dangers while profiting from the traffic they generated, Defendant proximately caused the destruction of Plaintiff's business.

## COUNT VI: DECLARATORY JUDGMENT *(Spoliation and Loss of Safe Harbor)*

60. Plaintiff incorporates all preceding paragraphs.

61. Plaintiff seeks a judicial declaration that Defendant's destruction of the channel

constituted spoliation of evidence under *Jones v. Riot Hospitality Group*, 95 F.4th 730 (9th Circuit 2024) and *Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Circuit 2006).

62. Plaintiff seeks a judicial declaration that Defendant has forfeited DMCA Safe Harbor protection by failing to terminate repeat infringers (Troi Torain, Money Boy Trey) and by knowingly facilitating fraud.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. **Damages:** Compensatory damages in an amount to be determined at trial, representing lost revenue, reputational harm, and destruction of business value.
2. **Injunctive Relief:** An order reinstating Plaintiff's channels and enjoining Defendant from further retaliatory strikes.
3. **Declaratory Relief:** A declaration that Defendant's destruction of the channel constituted spoliation of evidence.
4. **Sanctions:** Sanctions for bad faith conduct and witness tampering.
5. **Jury Trial:** Plaintiff demands a trial by jury on all triable issues.

Respectfully submitted,

Dated: 12/3/2025

By: __/s/ DaShay Hall Sr. _____

DaShay Hall Sr.

629 Westridge Court

Yukon, OK 73099

Tel: (317) 697-0781